466 P.2d 50

**James STRONG, Petitioner,**

**v.**

**INDUSTRIAL COMMISSION of Arizona, Respondent,**

**J. Garner Company, Inc., Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 256.**

Court of Appeals of Arizona, Division 1, Department A.

March 12, 1970.

Review Denied May 12, 1970.

Rehearing Denied April 13, 1970.

Huerta & Johnston, Phoenix, by Spencer K. Johnston, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by Courtney L. Varner, Phoenix, for respondent State Compensation Fund.

DONOFRIO, Presiding Judge.

The petitioner brings a writ of certiorari to review the lawfulness of two awards and findings of the Industrial Commission, issued in his two separate claims, bearing the Commission No. BD 36677 (hereinafter known as the leg claim) and No. BD 33655 (hereinafter known as the back claim), both of which were issued on November 13, 1968. Both of these awards made findings that petitioner had no disability attributable to the respective claims.

The petitioner was initially injured in an industrial accident on October 23, 1959, from which injury he developed a chronic osteomyelitis. This condition subsided, but on July 11, 1966, he was struck by a swinging pipe on his previously injured left leg which caused a flare-up of the osteomyelitis. The medical reports indicated that prior to this injury he had been asymptomatic as to the osteomyelitis. His claim was accepted for benefits and given claim No. BD 36677. One month later, on August 8, 1966, the petitioner was loading crates onto a truck when he felt a sharp pain in his lower back. His injury was diagnosed as a sprain of the left leg and low back. This accident was accepted as an industrial responsibility and given claim No. BD 33655. Petitioner was employed by the same employer at the time of both industrial episodes.

Petitioner was being treated by the same doctor, Dr. Sidney L. Stovall, M.D., for both injuries. Dr. Stovall reported on his monthly report form dated May 15, 1967, as follows:

"I am happy to report that there is no further evidence of flare-up as far as his osteomyelitis is concerned and the patient is making progressive improvement."

In accordance with Dr. Stovall's report, the Commission, on June 7, 1967, issued findings and award for temporary disability in claim No. BD 33655, the *back claim*. This findings and award was in error, as Dr. Stovall's report referred only to the leg claim, as it mentioned only the osteomyelitis, therefore the award should have been entered in claim No. BD 36677. This issue was not raised, and the award was not protested.

The petitioner was examined in group consultation by three medical experts on July 13, 1967. Their report listed claim No. BD 36677, the leg claim, although in substance it referred to both injuries, and a carbon copy of that report is filed in the back-claim file. The report recommended increased activity based on a finding of no acute osteomyelitis and no residuals from the back sprain. It recommended a period of thirty to forty-five days of increasing activity, followed by return to regular work.

On September 5, 1967, the petitioner filed a petition to reopen his back claim. This was supported by a medical report from Dr. Stovall dated August 3, 1967, which was erroneously filed in the still open leg-claim file. As the result, medical benefits were paid from the leg claim.

Petitioner was again examined in group consultation on September 22, 1967. The consultants reported they found no real objective residuals of the accident of August 8, 1968 (back claim), and felt that the patient was physically capable of working. They concluded that he suffered no permanent disability attributable to the back injury. Petitioner continued to complain of symptoms in his lower back, and was again examined in consultation on December 22, 1967, with reference to both claims. The Board reported:

"This patient's condition is and has been stationary. He has no indication for further medical treatment or observation, and no objective residuals of the accident are apparent today. Specifically, the consultants are unable to explain his continuing prominent back complaints in the absence of abnormal physical findings.

"He is physically capable of working, and may be discharged without disability."

The Commission issued an award on January 5, 1968, for temporary disability in the

leg claim, to which the petitioner filed a timely petition for hearing.

On January 11, 1968, the Commission issued additional findings and award for temporary disability in the back claim, reopening the claim for medical benefits, granting accident benefits, and finding petitioner had no physical or mental disability as the result of the accident and injury to his back.

At the request of Dr. Stovall, the petitioner was examined by Dr. John J. Kelley, a neurosurgeon, who had an electromyographic study made by Dr. Sam C. Colachis, Jr. Dr. Colachis reported that this study was "essentially normal with no evidence of significant root injury." Dr. Kelley reported that he did not recommend surgical investigation or treatment at that time, May, 1968.

A hearing was held on June 24, 1968, at which Dr. Kelley and Dr. Stovall testified, in addition to the petitioner and two other lay witnesses. Following the hearing, the referee issued a report in which he found that the petitioner had no disability attributable to either of the industrial episodes. The Commission followed the recommendation of the referee's report, and on November 13, 1968, issued the two awards complained of in the respective claims.

 Petitioner urges by a supplemental memorandum filed after the filing of the reply brief, that the awards should be set aside on the basis that medical benefits and compensation were erroneously paid for the back injury from the leg-claim file. This Court has in the past urged the Commission to consolidate cases when it is apparent that the injuries and the symptoms and disabilities flowing therefrom are difficult, if not impossible, to separate, and where the same employer-employee relationship exists in both claims. Although in the instant case it appears that this was done inadvertently, still it is the procedure which meets with our approval, and we will not set the award aside on this basis.

The question before the Court is whether the awards of the Commission are reasonably supported by the evidence.

 It is the function of the Court of Appeals when petitioned to review Industrial Commission awards to determine whether the evidence before the Commission reasonably supports its decision, and not to try the case anew. Andreason v. Industrial Commission, 6 Ariz.App. 434, 433 P.2d 287 (1967). The Commission's findings, as trier of facts, must be sustained if reasonably suppported by the evidence. Valdon v. Industrial Commission, 103 Ariz. 547, 447 P.2d 239 (1968). However, when the evidence before the Industrial Commission is such that the only reasonable interpretation of it is one that leads to a conclusion different from the one reached by the Commission, the reviewing court has no alternative but to set the award aside. Lugar v. Industrial Commission, 9 Ariz.App. 44, 449 P.2d 61 (1968).

 The evidence in the instant case follows a pattern which is not infrequent in cases involving back injuries. That is, the patient continues to suffer subjective symptoms of pain and restriction of movement, his attending physician testifies that the petitioner is not malingering, that he is sincere and honest in describing his symptoms, yet the physician is unable to demonstrate objective symptoms which would account for the subjective ones. In an effort to get at the cause, he requests a medical consultation board which, when it also is unable to demonstrate objective symptoms, attempts to solve the problem by stating there is no further treatment it can give the petitioner and therefore reaches the illogical conclusion that since there is no treatment, the petitioner suffers no disability. This is the recommendation which was followed by the Commission in issuing a "no disability" award in both the leg claim and the back claim. We do not believe the state of the evidence supports such a conclusion. A careful examination of the record before the Commission con-

vinces us that reasonable men could reach only a conclusion opposite to that drawn by the Commission.

At the hearing Dr. Stovall, the attending physician, testified in part as follows:

"Q * * * Can you say as a matter of fact that he is entirely cured of both of these traumas that you have described?

"A No.

"Q He still has symptoms?

"A He still has symptoms.

"Q That are reasonably or medically residual from one or both of these accidents?

"A I think so, yes.

* * * * * *

"Q On November 29, 1967, did you perform an orthopedic examination of this gentleman?

"A Yes, sir.

* * * * * *

"Q Was there any actual objective evidence on that date?

"A Well, he had muscle spasm with limitation of back motion which I felt was objective.

* * * * * *

"Q The fact remains, doctor, does it not, that in December and January and February and April this man did have continuing symptoms that indicated he wasn't entirely cured of one or both of his injuries?

"A That is correct.

"Q The mere fact that no one has been able to properly diagnose the condition for treatment does not indicate, does it, that he is cured and is free of pain, and is able to do his former heavy work?

"A No.

* * * * * *

"Q Do you have any reason to disbelieve him? Has he been a malingerer or trying to fool you in any of the examinations over the years?

"A I don't think so, no."

Dr. Kelley, who saw the petitioner on May 15, 1968 by referral from Dr. Stovall, testified as follows:

"Q * * * All motions of the low back are markedly restricted?

"A Yes.

* * * * * *

"Q When it says 'markedly restricted', does that mean there is considerable restriction of motion?

"A Yes, sir.

* * * * * *

"Q Well, did you arrive at any opinion from your examination, Doctor, that there was a true limitation in his bending, flexing, and so forth?

"A There was obvious limitation in his movement determined at the time of the examination, yes.

* * * * * *

"Q On overriding his limitations, Doctor, did this appear to be legitimate?

"A Well, I was unable really to override his limitation because of the pain produced in attempts to do that.

* * * * * *

"Q How about a sensory examination? Did you find some hypalgesia?

"A Yes, I did.

* * * * * *

"Q Does the test rule out the fact, if it be a fact, that there was remaining irritation in the fibrous tissues and muscle tissues in the spine and in the leg?

"A No, sir.

"Q Were his symptoms and findings consistent with some kind of painful irritation in those areas?

"A I think so.

"Q If I read your conclusions and impressions correctly, Doctor, you feel that at the time of this examination there was no surgical treatment

warranted from what you found objectively?

"A Yes.

"Q This does not rule out the proposition that he still has pain and suffering and spasm and difficulty in that area, does it?

"A In what area?

"Q In his back and leg.

"A No, sir.

"Q It is just that no one has yet figured out any way to stop or cure it, is that correct?

"A No one has found a successful treatment for it, that is right."

In addition to the two medical doctors who testified, two lay witnesses, Fred Jackson, Jr., and Robert Donald Venditti, both of whom had known the petitioner for many years, and both of whom had had occasion to observe petitioner in his work both before and after his industrial incident, testified. Both stated that prior to the accident petitioner was a good, hardworking laborer, while after the accident he was physically unable to perform his duties. Mr. Vendetti was a plumbing foreman, and his evaluation of the petitioner before his injury was, "You couldn't ask for a finer laborer or a man who could perform any better than Jim." He also testified:

"Q After his disabilities and injuries of 1966, and after his surgeries, etc., have you had occasion to observe him trying to go back to this kind of work and, if so, when?

"A I called Jim a couple of times before April of this year to go to work, and he was at the time unable to. In April I called him, and he said the doctor released him seemingly to try it, and he worked for me two days, but he could not cut it.

* * * * * *

"Q Did he try to do this job?

"A Yes, sir, he tried.

"Q You have had long experience, I assume, in overseeing labor?

"A Yes, I believe I have.

"Q Could you say from your experience that he did an actual effort at trying to do the work?

"A Yes, Jim tried. Knowing him in the past and to what he was doing at the present time, there was a world of difference.

"Q Did you have to lay him off because he couldn't perform?

"A Yes, sir."

In light of this state of the evidence, we feel that the awards of the Commission finding that the petitioner suffered no disability are arbitrary and unreasonable, and we are compelled to set the awards aside.

STEVENS and CAMERON, JJ., concur.