547 P.2d 1097

Henry D. SMITH, Sr., Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

City of Tucson, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 1309.

Court of Appeals of Arizona, Division 1, Department C.

March 30, 1976.

Rehearing Denied May 6, 1976.

Review Granted June 2, 1976.

David Eppstein & Tretschok by Dale D. Tretschok, Tucson, for petitioner.

Gregory L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund, by George B. Morse, Tucson, for respondents employer and carrier.

## OPINION

NELSON, Presiding Judge.

Our decision in *Adams v. The Industrial Commission of Arizona* (1 CA–IC 1296), 26 Ariz.App. 289, 547 P.2d 1089 (1976), filed this day, relating to Rule 13d, Rules of Procedure for Workmen's Compensation Hearings Before the Industrial Commission of Arizona (Nov. 1, 1973), requires the award herein to be set aside.

Henry D. Smith, Sr., petitioner herein (Smith), injured his back on May 19, 1972 while working for the City of Tucson, respondent employer. The State Compensation Fund, respondent carrier (SCF), accepted the claim for workmen's compensation benefits. Benefits were paid through April 8, 1974 when they were terminated as a result of a notice of claim status issued May 3, 1974 terminating compensation and medical benefits because Smith had been discharged without permanent disability. A hearing was requested and subsequently held as a result of the May 3, 1974 notice of claim status. On November 29, 1974 the hearing officer issued a Decision and Award for Temporary Disability. After a request for review resulted in the hearing officer affirming his previous decision, the matter was brought here on certiorari.

Although a number of doctors treated Smith in the interim between his injury and the hearing on October 17, 1974, only Farouk Antoine Habra, M.D., an orthopedic surgeon, testified at the hearing. Dr. Habra had examined Smith twice, once on October 3, 1973 and again on January 31, 1974 in consultation with two other doctors, Larry I. Mann, M.D., and Melvin D. Roberts, M.D. As a result of the latter consultation, a report was filed, signed by all three doctors, and was part of the record before the hearing officer.

The final few sentences of that report are enlightening:

"This patient has a so-called chronic mechanical back and a congenital defect of spina bifida occulta at L5 by X-ray becoming symptomatic as a direct result of the May 19, 1972 injury. We do not expect any permanent disability; however, under the circumstances with persistent symptomatology, he should not be expected to perform any heavy work. This would, more specifically, preclude bending, lifting, stooping, or heavy machinery handling. It is our recommendation to have the patient rehabilitated or retrained into more sedentary type work."

Dr. Habra's testimony regarding the report clarifies the apparent ambiguity in the consultation report and points out the dilemma the doctors find themselves in regarding the AMA Guides in cases such as this one:

"Q. Now you said, you also say [in the report] you don't expect any permanent disability, but you then go on and recommend restrictions; can you tell us what those restrictions were briefly and then I have another question to ask you after you complete that.

"A. Yes. Well, we felt that the—the injury, itself, caused the pain to appear, to surface up, to start having back pain. Now theoretically an injury like this should get better or go back to normal in six to eight weeks, ten weeks, twelve weeks. He obviously did not and a long time passed before I even saw him for the first time. He had all the treatments that one would treat a problem like his

very adequately before I even saw him. We felt, however, that he could not really under the circumstances at the time he was seen return to a heavy duty type work.

"Q. Because of the pain that it would produce?

"A. Because of the pain that he was complaining about. No matter what he did he complained of pain. And we, felt that he was genuine; that he was really very honest in his pain. And that's why we felt we should just come up with a statement that would kind of cover it all. And we did not feel he had a permanent disability *as far as rating* is concerned from that particular injury, but then on the other hand we felt that he really could not do the heavy work he had elected to do as a career without hurting . . .

\*   \*   \*   \*   \*   \*

"Q. Doctor, when you talk about not being able to rate this as a disability, what you are talking about, I assume, is not being able to rate it within the criteria of the AMA Guides; is that correct? The American Medical Association?

"A. Right. Exactly.

"Q. If you were to ignore the AMA guide based upon your view of Mr. Smith and the fact that he does have tingling pain would you indicate that he would have a disability based on that continuing pain?

"A. Well, yes, definitely. If he—if we could rate someone only on pain, he should have it. And this is, I think, indirectly what we are saying. We recommended rehabilitation, retraining in another job that hopefully would pay him as much as he was making or something similar to what he was making while a heavy laborer.

"Q. Let me reiterate just a second. He had pre-existing conditions, the mechanical back and the spina bifida and the accident produced pain. This pain now is

a limiting factor and if you could rate pain along [sic] without objective findings as required by the AMA guides, you would rate him as a disability; is that a fair statement?

"A. Yes." (Emphasis supplied)

The doctor went on to testify that there were some objective findings of muscle spasm on each occasion when Smith was examined, but apparently these were insufficient findings to enable a disability rating within the AMA Guides.

While there is some dispute among the lawyers as to whether the AMA Guides allow a rating of pain generally, we do not perceive this to be in issue here. Doctor Habra's testimony, coupled with the report authored by himself and two other prominent physicians, makes it clear that in cases such as this one, the AMA Guides do not provide for a disability rating for pain. Counsel for the carrier not only agreed with the doctors in his brief, but set forth therein, as an appendix, a portion of the AMA Guides which makes it clear that the percentage rating for pain is allowable only in cases where it is demonstrable in connection with peripheral spinal nerves and is objectively verifiable as set out therein. After setting forth three criteria in the introduction to Chapter 11, AMA Guides, The Peripheral Spinal Nerves, this language of the American Medical Association is clear:

"Subjective complaints of pain which cannot be substantiated along these lines are not considered within the scope of this guide."

Interestingly, it was the group of doctors involved in this case who were trying very hard, as a result of their examinations and consultation, to give effect to the law of Arizona as announced by this Court and the Supreme Court of Arizona. Their efforts were negated by the hearing officer's interpretation of Rule 13d, supra, making the AMA Guides exclusively controlling in these cases. *Adams v. The Industrial Commission of Arizona*, supra.

Objective medical findings are not required to support a disability based upon pain. Subjective symptoms of pain can be severe enough to be *disabling* and thus compensable. *Matthews v. The Industrial Commission of Arizona,* 20 Ariz.App. 350, 512 P.2d 1237 (1973); *Ward v. The Industrial Commission of Arizona,* 20 Ariz. App. 237, 511 P.2d 681 (1973); *Mahan v. The Industrial Commission of Arizona,* 14 Ariz.App. 535, 484 P.2d 1064 (1971); *Newman v. The Industrial Commission of Arizona,* 14 Ariz.App. 154, 481 P.2d 524 (1971). Since we have at least some minimal objective findings, although not enough to bring the AMA Guides into play, we do not even have the rare case of valid subjective symptoms in the complete absence of objective medical findings. *Newman v. The Industrial Commission of Arizona,* supra. Disabling pain is compensable. *Midland-Ross Corporation v. The Industrial Commission of Arizona,* 107 Ariz. 311, 486 P.2d 793 (1971); *Greer v. The Industrial Commission of Arizona,* 16 Ariz.App. 594, 494 P.2d 1339 (1972).

Without the proscription of the AMA Guides, the doctors all agreed Smith had disabling pain in his back. Thus the interpretation of Rule 13d, supra, here, as in *Adams,* supra, requires this award be set aside. Since this is an unscheduled injury, A.R.S. § 23–1044C, it remains to be determined what loss of earning capacity, if any, Smith suffered as a result of this injury.

The award is set aside.

HENRY S. STEVENS, Judge, Retired, concurs.

*NOTE*: The Honorable HENRY S. STEVENS, Judge, retired, was called to participate in the disposition of this matter.

WREN, Judge (specially concurring).

While I concur with the result reached by the majority opinion that the award should be set aside, I disagree with its attack on Rule 13d and the AMA Guides for the reasons stated in my dissenting opinion in *Adams v. Industrial Commission,* supra. The problem here, however, goes much deeper than *Adams,* and entails additional discussion, in that this opinion delves into what is stated to be a conflict as to disabling pain between the Guides and the case law expressed in *Matthews v. Industrial Commission,* supra; *Ward v. Industrial Commission,* supra; *Mahan v. Industrial Commission,* supra; and *Newman v. Industrial Commission,* supra.

These cited cases have clearly asserted that objective medical findings are not required to support a finding of a disability based upon subjective symptoms of pain. Therefore, says the majority, the requirement contained within the Guides themselves that there must be objective, ratable medical findings to support subjective symptoms of pain before there can be a finding of disability, is contra to such case law.

I find no such conflict. In my opinion the majority decision ignores both the terminology and the purpose of Rule 13d as to unscheduled awards. The Rule does not, as a prerequisite to a determination of permanent disability, require a rating of functional impairment as to such awards under A.R.S. § 23–1044(C). It merely states that " . . . Any rating of the percentage of functional impairment shall be in accordance with the standards . . . . " set forth in the Guides. In other words I do not read the statute and rule as requiring a percentage rating for "unscheduled" injuries under § 23–1044(C) in order to support an award for a compensable claim.

The need for a uniform system for evaluating "scheduled" injuries under A.R.S. § 23–1044(B) is obvious, since the computation of the presumed loss of earning capacity varies directly with the percentage of disability. The logic of the scheduled award provides that workers receiving the same percentage of scheduled impairment should receive the same percentage of their Average Monthly Wage for the same num-

ber of months. Unscheduled or "odd-lot" injuries could not be the subject of such a uniform system since § 23–1044(C) specifically provides that actual loss of earning capacity be compensated in such unscheduled cases. Under the latter statute the percentage of impairment is only one of many factors used to determine loss of earning capacity.

To bring about a uniform evaluation of scheduled injuries, and to provide for the orderly administration of justice, the Legislature included the following authorization to the Industrial Commission in A.R.S. § 23–1044:

"G. The commission may adopt a schedule for rating loss of earning capacity and reasonable and proper rules to carry out the provisions of this section."

Because the loss of earning capacity in a scheduled injury is determined solely by the nature and extent of impairment, the "schedule" mentioned in § 23–1044(G) necessarily refers to a schedule to be used in evaluating these injuries in a uniform manner.

Such a construction is, I believe, in full accord with dictum in *Russell v. Industrial Commission*, 8 Ariz.App. 563, 448 P.2d 407 (1968), which, although handed down prior to the adoption of Rule 13d, asserted: "we find no requirement that unscheduled physical functional disabilities must be expressed in a given percentage figure." It is to be noted that *Mahan, Ward, Matthews,* and *Newman* all involved "unscheduled" injuries. As to such injuries, the rule requires only that any such rating, if given, shall be in accord with the AMA Guides.

*Mahan* constitutes a directive to the hearing officer that the absence of objective medical findings will not necessarily require a find of no permanent disability. Rule 13d is a directive to the medical profession, specifying the terms in which they must express their findings or opinions as to the amount of functional impairment. The Rule creates no direct relationship between those opinions and the hearing officer's findings in the unscheduled injury case; and such a rating is not required, either to support a finding of permanent disability or a loss of earning capacity. While the findings of the hearing officer here make no specific reference to any lack of objective medical findings under the AMA Guides, it is apparent from the transcript of the hearing that he deemed it essential. The award must therefore be set aside.

I consider it important, however, to preserve the exclusivity of the Guides on rating pain. Any analysis of the operation of the Guides in the nebulous area of pain measurement is of course difficult for one whose background is legal rather than medical, and who is handicapped by lack of expertise and knowledge on the practical functioning of the Guides. Moreover, there is an absolute paucity of decisional law on the issue involved, and the briefs submitted by counsel give only a cursory recognition of the issue involved.

Initially, it must be noted that the Guides *do* rate pain when that pain can be demonstrated by measuring impairment to the nervous system. The majority opinion concedes this, but concludes that this fact does not preserve the validity of their exclusive use here since the pain *in this case* could not, according to Dr. Habra, be rated because there was no objective impairment.

I do not agree that the validity of the Guides was in any way disturbed by the doctor's inability to rate petitioner's pain because it was purely subjective. As pointed out by the majority, the Guides do not rate subjective pain. But I note that Dr. Habra, when asked how he would rate such pain, stated that he did not know how to rate it, because all such pain was relative and subjective and belonged to the patient.

To me the reasoning behind the AMA Guides' requirement that before subjective complaints of pain can be considered within the rating scope of the Guides they must be substantiated within the parameters laid down, is to at least partially shut the door against the malingerer, particularly in the "back" cases. I am not saying that peti-

tioner here was a malingerer, especially since the doctors believed that his complaints were genuine, and I am fully cognizant of the statements by this Court in *Strong v. Industrial Commission*, 11 Ariz. App. 499, 466 P.2d 50 (1970), wherein it was held that a physician's testimony that petitioner was sincere and honest in describing his symptoms overrode petitioner's inability to demonstrate objective symptoms to account for the subjective ones. See also *Matthews*, supra.

But I would urge that this Court's further intrusion into the realm of credibility of subjective pain, by denouncing the AMA Guides, is both unwise and unwarranted.