547 P.2d 1089
**Don C. ADAMS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Karlson Machine Works, Inc., Respondent Employer,**

**Employers Mutual Liability Insurance Company of Wisconsin, Respondent Carrier.**

**No. 1 CA–IC 1296.**

Court of Appeals of Arizona,
Division 1,
Department C.

March 30, 1976.

Rehearing Denied May 6, 1976.
Review Granted June 2, 1976.

---

**290**

Jerome & Gibson, P. C., by Richard A. Gibson, Phoenix, for petitioner.

Gregory L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Lewis & Roca, by Merton E. Marks and R. Kent Klein, Phoenix, for respondents Employer and Carrier.

## OPINION

NELSON, Presiding Judge.

This decision presents for review the question of the validity of Rule 13d, Rules of Procedure for Workmen's Compensation Hearings Before the Industrial Commission of Arizona (November 1, 1973). We hold that Rule 13d, hereinafter quoted, as applied by the hearing officer is in excess of the statutory rule making grant to the Industrial Commission of Arizona. We also hold that the rule itself does not mandate the hearing officer's legal conclusion and when viewed in the light of this opinion the rule does not fall within constitutional prohibitions. This holding requires that the award in this case be set aside.

■ The general law regarding the power and authority of an administrative agency to make rules and regulations to carry out its statutory responsibilities is clear. An administrative agency must exercise any rule making authority granted by statute within the framework of that statutory grant. There is no authority or power to create a rule or regulation out of harmony with the statutory grant and any effort to do so will be considered an usurpation of the constitutional powers vested in the legislative body. If there is a legislative grant of authority, however, the agency may make rules and regulations supplementing the legislation for its complete operation and enforcement, so long as such rules and regulations are within the standards set forth in the act of the legislative body. *Ruiz v. Morton,* 462 F.2d 818 (9th Cir. 1972), affirmed 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Swift & Company v. State Tax Commission,* 105 Ariz. 226, 462 P.2d 775 (1969); *Haggard v. Industrial Commission,* 71 Ariz. 91, 223 P.2d 915 (1950); *State Compensation Fund v. De La Fuente,* 18 Ariz.App.

246, 501 P.2d 422 (1972), *review denied,* 109 Ariz. 439, 511 P.2d 621 (1973).

The general rule making power of the Industrial Commission of Arizona in workmen's compensation matters is found in A.R.S. § 23–921B. In addition, A.R.S. § 23–1044G authorizes the Commission to adopt "reasonable and proper rules to carry out the provisions of this section".

Rule 13d, supra, reads thusly:

"If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any ratings of the percentage of functional impairment shall be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in 'Guides to the Evaluation of Permanent Impairment.' It shall include a clinical report in sufficient detail to support the percentage rating assigned."

The foregoing rule admonishes that practitioners of the healings arts (practitioners) who render reports or who testify in workmen's compensation matters shall give consideration to the AMA guidelines. The rule does not, however, in our view, preclude the practitioners from following other guidelines or their own professional judgment, thus enabling the hearing officers to weigh and evaluate professional evidence which may not be in full accord with the AMA Guides.

■ The record in the case before us on this matter (see also: *Smith v. Industrial Commission of Arizona,* 26 Ariz.App. 297, 547 P.2d 1097 (1976); *Sanders v. Industrial Commission of Arizona,* 27 Ariz. App. ——, —— P.2d ——, Memorandum Decision; *Zolman v. Industrial Commission of Arizona,* 27 Ariz.App. ——, —— P.2d ——, Memorandum Decision, all filed this date) makes it clear that the exclusive use of the American Medical Association's "Guides to the Evaluation of Permanent Impairment", will make it impossible, in a certain number of situations, for the Industrial Commission to make the awards it is required to make pursuant to A.R.S. § 23–1044. While there is some argument made that the rule only governs the calculations and testimony of the physicians and not the determination made by the hearing officer and the Industrial Commission, the decisional law in this jurisdiction prohibiting the substitution of the opinions of either the hearing officers, the Industrial Commission, or the Courts, in matters lying exclusively within the expertise of the medical profession, makes such an argument unsupportable. E. g., *State Compensation Fund v. Keefe,* 22 Ariz.App. 311, 526 P.2d 1266 (1974); *Waller v. The Industrial Commission of Arizona,* 99 Ariz. 15, 406 P.2d 197 (1965).

■ Because of the fact that there can be no serious question that the AMA Guides provide an almost unquestioned accurate measurement of impairment in many cases, and would be evidentiary support even in those cases where its exclusivity is properly objected to, the general maxim that courts should construe language in statutes and rules in a way to avoid an absurd result and to avoid invalidity becomes even more imoprtant here. E. g., *State v. AiResearch Mfg. Co.,* 68 Ariz. 342, 206 P.2d 562 (1949). Technical wording must yield, when the clear statutory intention, such as that in A.R.S. § 23–1044 to fully compensate for the true partial hearing loss of the petitioner here, would be frustrated. E. g., *In re Estate of Henry,* 6 Ariz.App. 183, 430 P.2d 937 (1967). See also: *State Board of Directors for Junior Colleges v. Nelson,* 105 Ariz. 119, 460 P.2d 13 (1969). Where, as here, the exclusive application of the AMA Guides would frustate the purpose of the statute, the word "shall" in the rule is interpreted as permissive, rather than mandatory. In addition, because of the general acceptability of the AMA Guides, we have determined that the holding in this case is to be applied prospectively only except as to those cases wherein further review by the Industrial

Commission of Arizona or this Court is still available. *Hollywood Continental Films v. The Industrial Commission of Arizona,* 19 Ariz.App. 234, 506 P.2d 274 (1973). See also: *Southern Pacific Company v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963); *Arizona State Tax Commission v. Ensign,* 75 Ariz. 376, 257 P.2d 392 (1953); *City of Tempe v. Del E. Webb Corporation,* 14 Ariz.App. 228, 482 P.2d 477 (1971), Annot., 10 A.L.R.3d 1371 (1966). This decision will not support a petition to reopen, pursuant to A.R.S. § 23–1061H.

In the case at bar, Don C. Adams, the petitioner (Adams), was employed as a machinist with respondent Karlson Machine Works. On September 28, 1973, Adams, while hammering lugs on a large tire rim, hit the rim and there suddenly developed a loud roaring noise in his head. On October 1, 1973, Adams sought the services of Jack Brooks, M.D., a specialist in otorhinolaryngology, complaining of a marked loss of hearing in the left ear and ringing or some type of noise present in both ears.

Petitioner filed a claim for workmen's compensation which was accepted by the carrier. Adams continued under the care of Dr. Brooks until January 28, 1974, when he discharged him from further treatment, rating his permanent impairment as an 11% hearing loss in the left ear. Adams had been fitted with a hearing aid for his left ear and had been released for regular work by Dr. Brooks on December 17, 1973. Employers Mutual Liability Insurance Company of Wisconsin, the respondent carrier (Carrier), issued a notice of claim status awarding Adams compensation for the partial loss of hearing in his left ear, pursuant to A.R.S. § 23–1044B(18) and (21).

Petitioner sought a hearing, claiming he had a greater disability than awarded. At the hearing he sought to show that not only was the percentage of hearing loss in his left ear greater than allowed, but that the accident had also caused a total loss of hearing in his right ear. The hearing officer found that the 11% hearing loss in

the left ear was correct and that Adams failed to carry his burden of proof regarding the causal connection between his admitted total loss of hearing in the right ear and the accident in question. After the hearing officer affirmed his decision on review, the matter was brought here for consideration.

We have reviewed the record and find that there is ample support in the record for the hearing officer's determination that Adams failed to carry his burden of proof regarding the causal connection between his loss of hearing in the right ear and the accident. However, the application of Rule 13d, supra, and through it the exclusive use of the AMA Guides to require a finding of 11% loss of hearing in the left ear, even though the only medical doctor present testified that but for the binding nature of the AMA Guides, Adams actually suffered a greater loss of hearing in the left ear, requires that the award be set aside.

Although Larry J. Lovering, a Ph.D. and an Audiologist who examined Adams at the request of Dr. Brooks for the purposes of measuring his hearing and fitting Adams with a hearing aid testified, Dr. Brooks made the calculations resulting in the determination of an 11% loss of use of hearing in the left ear. Dr. Brooks was the only medical doctor whose records were in evidence and who testified in this case. In order to show how the mandatory use of the AMA Guides prevented Dr. Brooks, and thus the hearing officer and the Commission, from establishing Adams' actual partial loss of hearing in his left ear, as required by A.R.S. § 23–1044B(21), it is necessary to set forth the record at some length.

After Dr. Brooks had given the 11% rating according to the AMA Guides on direct examination, the following foundational questions and answers were given:

"Q. Doctor, you say in your report there that 11 percent does not truly reflect the loss because of the loss of the higher tones. Could you explain that statement?

"A. Well, the percentage, according to this method of calculation, does not actually reflect the loss in the normal function of conversation.

"Q. Is there another rating scale which would more truly and correctly reflect Mr. Adams' loss?

"A. The Department of Labor has a relatively new standard which they feel more closely reflects the amount of functional loss.

"Q. Are you familiar with that standard and the formula by which it operates?

"A. Yes, I am.

"Q. Do you have an opinion as to which standard would more correctly reflect his true loss?

"A. I think—I think today it is felt that the Department of Labor's schedule more closely reflects the actual loss.

"Q. Have you computed the loss of hearing according to that standard?

\* \* \* \* \* \*

"THE WITNESS: The answer is Yes."

Following this answer an objection was interposed as to a further reference to the Department of Labor standard, it being urged that the terms of Rule 13d mandate the use of the AMA Guides. The hearing officer's position is clear:

"THE HEARING OFFICER: Perhaps you'll be on the committee for changing the rules, Mr. Gibson. The rules presently provide that any permanent impairment must be on the A.M.A.'s guide for permanent impairment.

"MR. GIBSON: Regardless of whether that rule truly reflects what the actual loss is?

"THE HEARING OFFICER: I'll let him answer. You'll have to understand that's what the rules provide at this time, at least. So, in other words, what I'm saying, I couldn't consider that.

"Q. BY MR. GIBSON: Well, what loss in the left [ear] did you find, according to that standard, Doctor?

\* \* \* \* \* \*

"THE WITNESS: I would like to preface my answer by saying I'm not acquainted with what determines compensation or what are the rules.

According to the formula of the U.S. Department of Labor he would have—his loss in the left ear would be calculated at 30 percent loss."

Thus we have an eminently qualified specialist, a member of the A.M.A. as well as his own specialty group within that organization, testifying unequivocally that at the time of the hearing in this case, the AMA Guides, in this area at least, did not accurately reflect Adams' true loss of hearing and that the new guides published by the United States Department of Labor did accurately reflect the loss.

■  The hearing officer did not believe that he had the authority under the rules, supra, to consider the testimony contrary to, or from a source other than the AMA Guides. His analysis of his responsibility under Rule 13d was erroneous as a matter of law and constituted the prejudicial exclusion of competent medical opinion. A rule which would prohibit the consideration of valid evidence would be invalid.

A.R.S. § 23–1044B(21), supra, provides for the payment of compensation for the partial loss of hearing. A formula for computation is set out based on the percentage of loss and the amount of compensation to be paid for total loss of hearing in one ear found in A.R.S. § 23–1044B (18). The statute says nothing about partial loss, as computed by the AMA Guides.

When the evidence clearly shows that in fact the application of the rule makes it impossible to fulfill the dictates of the statute regarding the awarding of benefits for partial loss of hearing, it must be said that the rule, as interpreted by the hearing officer, is not "reasonable and proper rules to carry out the provisions of this section". A.R.S. § 23–1044G, supra, and cases cited therewith.

Nothing in this opinion or the other cases decided this day should be read in a light unfavorable either to the AMA Guides or to the use of them by the Industrial Commission in this difficult area. In many situations these AMA Guides will not only be a sufficient foundation for an award in these types of cases, it may well be the only authoritative source upon which a reasonable award can be based. As can be seen in this case, there are, however, other valid standards and opinions which must be available to the hearing officer and the Commission in making these difficult decisions if they are to fulfill the mandates of the Legislature in making the awards. Rule 13d, supra, as interpreted by the hearing officer, prevents them from fulfilling those statutory mandates, and was given an invalid and too restrictive interpretation.

The award is set aside.

HENRY S. STEVENS, Judge, Retired, concurs.

NOTE: The Honorable HENRY S. STEVENS, Judge, retired, was called to participate in the disposition of this matter.

WREN, Judge (dissenting).

I regret that I am unable to agree with the majority decision. In my opinion the *exclusive* use of the American Medical Association's "Guides to the Evaluation of Permanent Impairment" is *mandated* by the terminology of Rule 13d, supra, and that as so interpreted it is not invalid as being in conflict with A.R.S. § 23–1044.

Initially I must confess some uncertainty as to exactly what the rationale of the majority opinion is, and whether it does or does not declare Rule 13d invalid and therefore unconstitutional if given a mandatory construction. Surely its validity cannot stand or fall on the sole criterion of whether a hearing officer interprets its provisions on use of the Guides as exclusive rather than permissive. To me the rule is not being given its obvious interpretation and has been completely rewritten by this Court.

The pertinent language of Rule 13d is plain and unequivocal:

"*Any* ratings of the percentage of functional impairment *shall* be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in 'Guides to the Evaluation of Permanent Impairment'." (Emphasis supplied.)

Yet the majority opinion concludes that the Rule does not "preclude the practitioners from following other guidelines or their own professional judgment", and thus permits the hearing officer to evaluate impairment expressed in terms of medical standards which are in conflict with the American Medical Association's (AMA) Guides. The means by which such a conclusion is arrived at in the face of the positive language of the Rule is explained to be a frustration of A.R.S. § 23–1044, since a mandatory construction, according to the opinion, would render certain awards required by the statute impossible.

This conclusion of the majority is predicated upon the theory that the exclusive use of the AMA Guides was unreasonable, and fell within constitutional prohibitions when Dr. Brooks' medical opinion asserted that the Guides did not reflect petitioner's true loss of hearing, and that the one published by the United States Department of Labor would have given petitioner a greater and more accurate percentage of loss. The mandatory language of the Rule is to be ignored, according to the majority, when there is medical testimony that the AMA Guides do not accurately measure the impairment.

I submit, however, that when measured against the desirability of uniformity such a contention is neither persuasive nor logical. Parenthetically, I would note the obvious fact that the evaluation of permanent impairment in any of the bodily systems covered by the AMA Guides involves subject matter that is highly complex. It would have been impossible for the Legis-

lature to lay down in advance an exact mathematical formula to which the Commission must adhere in rating impairment. As noted in *Dennis v. Jordan*, 71 Ariz. 430, 442, 229 P.2d 692, 700 (1951):

> " ' * * * legislation dealing with social and economic problems cannot be expected, and is not constitutionally required, to be of mathematical exactitude. There are bound to be twilight zones furnishing support to critics who cavil at the want of scientific precision in the law. * * * ' " *Equitable Credit and Discount Co. v. Geier*, 342 Pa. 445, 21 A.2d 53, 56.

It has been readily observable, even to my inexperienced eye, that such scientific precision is not available in the medical profession either. Through Rule 13d the Industrial Commission of Arizona, in adopting the AMA Guides as the standard through which medical opinions evaluating permanent impairment should be stated, has done nothing more than attempt to aid its own function in resolving conflicts in medical evidence.

Doctors are needed to testify as to the amount of loss of physical functions, and may give an opinion as to that ultimate fact, as such matters are wholly outside the knowledge of the trier of fact. They may also express the loss in terms of a percentage of the full functioning of the applicant before the injury occurred. See *Hoffman v. Brophy*, 61 Ariz. 307, 149 P.2d 160 (1944). The adoption of the AMA standards by the Industrial Commission was obviously an effort to make such percentage ratings uniform. Undoubtedly there are other rating standards, such as that of the United States Department of Labor, some of which would rate the hearing loss of the petitioner here at a lower level than that provided by the AMA Guides, and others which would rate it higher.

We are now handing the hearing officer the nebulous mandate that "where the exclusive application of the AMA Guides would frustrate the purpose of the statute (A.R.S. § 23–1044), the word 'shall' in the rule (13d, Rules of Procedure for Workmen's Compensation Hearings) is interpreted as permissive, rather than mandatory." Apparently this frustration will occur when a doctor has testified that the Guides do not accurately measure the impairment and expresses an opinion that another guide is better.

This principle places the standard to be used wholly in the hands of the individual doctor. What if another physician were to testify that the AMA Guides did constitute the more accurate standard? Is Rule 13d then to control or will this vary from hearing officer to hearing officer? Clearly, such a construction gives the rule a "yo-yo" effect, dependent for its validity upon the absence of medical opinion asserting the inaccuracy of the Guides.

Moreover, I can find no language in A.R.S. § 23–1044 prohibiting adoption by the Industrial Commission of a mandatory and exclusive standard for rating the statute's complex scheme for permanent impairment. To the contrary, § 23–1044G provides for the adoption of a schedule and rules to govern the rating process. In claiming that there is such prohibiting language, the majority opinion has merely pointed to an abstract interpretation of the statute that petitioner has a right to full compensation for his true hearing loss.

What the majority opinion overlooks is that the Industrial Commission *has* stated, by its use of Rule 13d, that petitioner *did* get full compensation for his hearing loss when the AMA Guides rated that hearing loss at 11 per cent.

I find no conflict in the statute, or any constitutional infirmity in the exclusive use of the AMA Guides, by virtue of the fact that the doctor here felt that they did not provide an accurate rating of the hearing loss and that another guide would be more exact. That an injustice may occur in a given fact situation does not per se render the controlling statute or rule unconstitutional, nor does it justify amendment by judicial fiat. See, 16 Am.Jur.2d, Constitu-

tional Law §§ 160, 162. The extent and character of rules and regulations of an administrative body must be fixed in accordance with common sense, *Haggard v. Industrial Commission*, supra.

In the preparation of this dissent I have devoted considerable time to a study of the AMA Guides, but do not now presume to understand their performance in terms of accuracy or comprehensiveness. While they obviously enjoy an empirical stature, I haven't the slightest idea as to the wisdom of their adoption and use, or the fairness of their application in the instant case. But the province of this Court is to interpret the record as we find it, and in that record I find no justification for telling the Industrial Commission that the plain terminology of Rule 13d is unreasonable; or that the Commission cannot set the boundaries · and chart the course for rating physical impairment following an industrial injury, by directing the physicians to use the same compass.

It is perfectly logical and reasonable that the Industrial Commission has determined that there should be only one standard by which to measure impairment. Without a required single standard as a basic premise, it would be difficult to ascertain whether two doctors were differing as to their appraisal of a particular condition or whether they were merely describing exactly the same condition in varying ways. Rule 13d provides a standardization among the medical profession, so that the hearing officer is able to comprehend the basis upon which medical witnesses are testifying. I submit that a uniform system and the resultant equality engendered by it is to be preferred. It seems ironic that, to me at least, Rule 13d was obviously designed to stop the exact practice (multiple standards) which the majority opinion now espouses as essential to retain the Rule's validity.

Since there is a complete paucity of decisional law on the issue involved here, it might be wise, at this juncture, to defer to certain language contained within the preface of the AMA Guides themselves:

"It is . . . important for him [the physician] to have the necessary authoritative material to assist him in competently fulfilling his particular responsibility—the evaluation of permanent impairment. It is the purpose of this and other reports of the Committee on Rating of Mental and Physical Impairment *to correct a past confusion of terms* and to provide a series of practical guides to the evaluation of various types of permanent impairments. (Emphasis supplied.)

\*     \*     \*     \*     \*     \*

"Competent evaluation of permanent impairment requires adequate and complete medical examination, accurate objective measurement of function, and the avoidance of subjective impressions and such factors as age, sex, or employability."

The observations and conclusions of Dr. R. Gray on the adoption of the Guides is perhaps apropos here also:

"The A.M.A. Committee on Medical Rating of Physical Impairment was first created in September of 1956 with authorization to establish practical guides for an evaluation of impairment ratings. The first guide to appear in the *Journal of the American Medical Association* presented ratings for illnesses and injuries affecting the Extremities and Back. Since that time, twelve other guides covering other body systems have been compiled and published in various issues of *JAMA*.

In 1971, all of these guides were published in a single volume. *In addition, the older guides were reviewed and updated where necessary with information accumulated and techniques developed since their inception.*" 4 R. Gray, M.D., Attorneys' Textbook of Medicine ¶ 181.11 at p. 181–14 (3rd Gordy ed. 1973). (Emphasis supplied.)

\*     \*     \*     \*     \*     \*

"Various medical societies and individual physicians have proposed several meth-

ods of evaluation. However the first attempt to formulate a practical as well as comprehensive guide to determine permanent impairment of individual body systems in regard to the whole man was made by the AMA Committee on Medical Rating of Physical Impairment." 4 R. Gray, supra at 181–15.

Expressing the caveat that the AMA Guides relate to evaluation of physical disability only, the National Commission on State Workmen's Compensation Law termed them "a welcome contribution". *Major Conclusions and Recommendations,* 1 Workmen's Comp.L.Rev. 657 (1974).

It is obvious that Rule 13d was not blindly adopted. It is also obvious that at the time of its adoption there were other and differing guides in existence for perusal and consideration by the Commission, and yet only one was chosen and that one was given exclusivity as representing the accumulated knowledge of the prestigious medical profession. If the superiority of the AMA Guides had to be proved in each hearing, any pretense of a uniform system would be lost.

It cannot be unconstitutional that the Commission has required that one doctor may not speak in terms of apples while another is talking in terms of oranges. If petitioner desires a more liberal rating system, his remedy is to seek adoption of such by the Commission and not to challenge the validity of the existing system in Court. The ensuing result of the opinion rendered today might well be a Pandora's Box of uncertainty in an area where uniformity and consistency are to be sought. The decision changes a system which has apparently been rigidly adhered to by the Industrial Commission in Arizona since the adoption of Rule 13d in 1970. More importantly perhaps, it erodes further a judicial system already under attack for usurping legislative and administrative functions.

I would affirm the award.