## Norfolk

RICHARD F. BADER

v.

NORFOLK REDEVELOPMENT
& HOUSING AUTHORITY, et al.

No. 1124-89-1

Decided August 28, 1990

698

---

COUNSEL

Ralph Rabinowitz (Rabinowitz, Rafal, Swartz & Gilbert, on brief), for appellant.

Daniel R. Lahne (Knight, Dudley, Pincus, Dezern & Clarke, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Richard F. Bader, claimant, appeals a decision of the Industrial Commission awarding him benefits for partial hearing loss due to loud noise exposure while working for Norfolk Redevelopment and Housing Authority, his employer. On appeal, Bader contends that the commission erred by utilizing the ANSI standard as a guideline for calculating loss of hearing rather than the American Medical Association (AMA) standard. Bader also asserts that, using the AMA standard, there was sufficient evidence to establish a hearing loss at a frequency greater than 2,000 Hertz (cycles per second). Because we find that the commission's opinion does not contain an adequate statement of the findings of fact to review whether the ANSI standard followed by the commission is valid according to the substantial weight of current medical opinion, we remand the case.

Richard Bader filed an application for workers' compensation benefits pursuant to Code §§ 65.1-46.1 and 65.1-56(17) for loss of hearing as a result of exposure to loud noise during his sixteen year employment with employer. The commission found that Bader's hearing loss was compensable, and this finding is not disputed. Rather, the parties disagree over the correct standard which should be used by the commission to measure the hearing loss. The commission determined that Bader had no hearing loss in his right ear and a five percent loss in his left ear according to the ANSI standard, which is incorporated in the Hearing Determination Chart appended to the Virginia Workers' Compensation Act, and made its award accordingly. Bader's physician, Dr. Berrett, determined that Bader sustained an 18.8 percent loss in his right ear and a 24.4 percent loss in his left ear, according to the AMA standard.

Bader asserts that the ANSI standard utilized by the commission is outdated. He argues that the ANSI measurements for hearing loss are significantly lower than AMA measurements, that the use of the ANSI standard deprives claimants of just compensation and is contrary to the letter and spirit of the Act. Therefore, Bader argues, the commission should have used the AMA

standard to determine the extent of his hearing loss.

■ The Hearing Determination Chart used as a guide by the commission in determining levels of compensable hearing loss is included in the "Tables" appended to the Workers' Compensation Act, preceding the Rules of the Industrial Commission. The Tables also include the Snellen's Chart table for assigning a percentage of loss of visual acuity to Snellen Chart readings and the Pneumoconiosis Guide for determining the stages of pneumoconioses pursuant to Code § 65.1-56 for given radiographic findings. These tables, while commonly utilized by the commission, are merely guidelines and cannot take precedence over Code § 65.1-56, which they are designed to implement. *See Smith v. Fieldcrest Mills, Inc.*, 224 Va. 24, 294 S.E.2d 805 (1982). The Tables are not the exclusive standards by which determinations can be made under the statute, *see id.*, and they do not have the binding effect of rules or regulations.

■ Prior to the decision of the Virginia Supreme Court in *Western Electric Co. v. Gilliam*, 229 Va. 245, 329 S.E.2d 13 (1985), the Industrial Commission routinely awarded compensation for hearing losses caused by a claimant's exposure to noise at work pursuant to Code § 65.1-46, "even though the general public was also susceptible to noise induced hearing loss outside of the employment." *Island Creek Coal Co. v. Breeding*, 6 Va. App. 1, 8, 365 S.E.2d 782, 786 (1988)(citations omitted). The General Assembly enacted Code § 65.1-46.1 in response to the *Gilliam* decision, which held that an ordinary disease of life is noncompensable regardless of its causal connection to a claimant's employment. *See id.* at 8-9, 365 S.E.2d at 786-87. The purpose of the statute was to return the law to its former state. *Id.* at 9, 365 S.E.2d at 787. Following the adoption of Code § 65.1-46.1, work related hearing loss is clearly compensable as an ordinary disease of life. The rate of compensation for permanent total and partial loss of hearing is set forth in Code § 65.1-56(17).[1] The statute does not contain a guideline for determining the percentage of permanent hearing loss. Rather, the commission is left to determine the percentage of hearing loss based on the evidence

---

[1] Code § 65.1-56(17) provides: "For the permanent total loss of the hearing of an ear, sixty-six and two-thirds percent of the average weekly wages during fifty weeks; and for the permanent partial loss of the hearing of an ear, the percentage of fifty weeks equivalent to the percentage of the hearing so permanently lost."

presented in each case. This determination typically involves the use of the Hearing Determination Chart appended to the Act. *See Breeding*, at 5 & nn. 5, 6, 365 S.E.2d at 784 & nn. 5, 6.

■ The Hearing Determination Chart is not a substantive rule of the commission subject to the Virginia Administrative Process Act (VAPA), Code §§ 9-6.14:1 through 9-6.14:25 or the Virginia Register Act, Code §§ 9-6.15 through 9-6.22. *Cf. Haines v. Workmen's Compensation Comm'r*, 151 W. Va. 152, 157, 150 S.E.2d 883, 886 (1966)(unwritten policy of commissioner is not a rule which must be filed in the office of the Secretary of State). A "rule" or "regulation" is defined under the VAPA and Virginia Register Act as "any statement of general application, *having the force of law*, affecting the rights or conduct of any person, promulgated by an agency in accordance with the authority conferred on it by applicable basic laws." Code §§ 9-6.14:4(F) and 9-6.16 (emphasis added).

■ The Hearing Determination Chart was not adopted pursuant to the commission's rule making authority under Code § 65.1-18 and therefore is not binding in law as are rules. *See Sargent Elec. Co. v. Woodall*, 228 Va. 419, 424, 323 S.E.2d 102, 105 (1984)(commission's adoption of rules is a legislative act and enactment is binding in law upon the parties and the commission). Neither is the Chart used as a standard with the force and effect of a substantive rule so that compliance with the notice and comment procedures of Article 2 of the VAPA was required for its publication. *See Federal Farm Credit Banks Funding Corp. v. Farm Credit Admin.*, 731 F. Supp. 217, 223 (E.D. Va. 1990)(agency required to comply with notice and comment requirements of federal APA before issuing accounting bulletin which interpreted generally accepted accounting principles and applied them to Farm Credit Insurance Fund); *see also West Va. Chiropractic Soc'y v. Merritt*, 358 S.E.2d 432, 437 (W. Va. 1987)(schedule setting forth maximum reasonable amounts payable to health care providers is rule required to be adopted in accordance with rule-making requirements of APA). The Chart is merely a guideline which the commission may use in determining the percentage of compensable hearing loss according to the ANSI standard.[2] There is no binding rule of the commission re-

---

[2] The Chart provides that "[i]f other standards such as ISO or ASA are used to determine decibels of hearing loss they should be adjusted to the ANSI standard."

quiring the use of the ANSI standard for measuring hearing loss.[3]

In addition to its statutorily granted powers, the commission also has incidental powers which are reasonably implied as a necessary incident to its expressly granted powers for accomplishing the purposes of the Workers' Compensation Act. *See* 1A Michie's Jurisprudence *Administrative Law* § 3, at 193 & n.12 (1980). The Act provides that incapacity to work due to hearing loss which meets the criteria of an ordinary disease of life shall be compensable as provided in Code § 65.1-56(17). *See Breeding*, 6 Va. App. at 11, 365 S.E.2d at 788. In order to carry out this purpose, the commission is entitled to use the Hearing Determination Chart as a guideline. Rather than invoking its delegated legislative power to make law through rules, the commission chose to adopt the Chart as an "interpretative rule," without the binding force of law. *See generally* 2 K. Davis, *Administrative Law Treatise* § 7:8 (2d ed. 1979). The commission's utilization of the Chart as a guideline is therefore subject to less deference and weight on review than a "legislative rule." *Id.* The Supreme Court stated in *General Electric Co. v. Gilbert*, 429 U.S. 125 (1976):

> The most comprehensive statement of the role of interpretative [rules] . . . is found in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), where the Court said: "[W]hile not controlling upon the courts by reason of their authority, [interpretative rules] do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors

---

[3] Compare the Hearing Loss Determination Chart with the rule of the Industrial Commission of Arizona discussed in *Adams v. Industrial Commission*, 26 Ariz. App. 289, 547 P.2d 1089, *vacated*, 113 Ariz. 294, 552 P.2d 764 (1976), and *Smith v. Industrial Comm'n*, 26 Ariz. App. 297, 547 P.2d 1097, *vacated*, 113 Ariz. 304, 552 P.2d 1198 (1976), which required a physician rating the percentage of an employee's functional impairment to give consideration to the AMA "Guides to the Evaluation of Permanent Impairment." The Court of Appeals of Arizona held in *Smith* that application of the rule was an abuse of discretion where exclusive use of the AMA guides deprived a claimant of compensation on the grounds that there was no objective finding of pain by the physician. In *Adams*, the court held that, where exclusive application of the AMA Guides would frustrate the purpose of the Workmen's Compensation Act, the word "shall" in the rule was to be interpreted as permissive rather than mandatory.

which give it power to persuade, if lacking power to control."

*Id.* at 141-42.

Dr. Berrett testified that recent medical studies advocate the use of a 3,000 Hertz measurement for determining hearing loss because that frequency is critical to predicting the degree of difficulty a person will have in speech discrimination with a background of noise. The ANSI standard does not measure hearing loss above 2,000 Hertz. Dr. Berrett stated that the ANSI standard is the standard to which an audiometer must be calibrated in order to use the Hearing Determination Chart, but that the AMA standards are much newer and more widely used in measuring hearing loss. There is no expert medical opinion in the record regarding hearing loss standards other than the testimony of Bader's physician, Dr. Berrett. The commission's opinion notes that "the Commission on Review is not willing to change its approved guideline for determining an employee's hearing loss as it recognizes there are arguments in both directions in this respect." Although we recognize that the commission adopted the Hearing Determination Chart in the light of its informed experience, without an adequate statement of the findings of fact, rulings of law and other matters pertinent to the issue of the current weight of medical opinion favoring use of the ANSI standard among practitioners we are unable to reach an informed decision as to the merits of Bader's challenge to its continuing validity. We therefore remand the case with directions that the commission make the appropriate findings concerning the commission's decision to use the ANSI guidelines rather than the AMA guidelines in this case.

*Reversed and remanded.*

Baker, J., and Barrow, J., concurred.