## Salem

ISLAND CREEK COAL COMPANY

v.

KEITHEL BREEDING

No. 0405-87

Decided March 1, 1988

COUNSEL

Thomas R. Scott, Jr. (Street, Street, Street, Scott & Bowman, on brief), for appellant.

Stephen A. Vickers, for appellee.

OPINION

**COLE, J.** — Island Creek Coal Company (Island Creek) appeals from a decision of the Industrial Commission finding that Keithel Breeding (Breeding) contracted an occupational hearing loss. Island Creek contends that (1) Code § 65.1-46.1, which makes ordinary diseases of life compensable, is inapplicable to Breeding's hearing loss because he did not suffer any injurious exposure after the effective date of the statute, July 1, 1986, and (2) even if Code § 65.1-46.1 is applicable to Breeding's claim, he failed to prove by clear and convincing evidence and to a reasonable medical certainty the elements required under that Code section. We hold that Code § 65.1-46.1 is applicable to Breeding's claim and that he met his burden of proof; therefore we affirm the commission's decision.

## I.

Breeding began his employment with Island Creek in February of 1965 as a roof bolter[1] and stoker operator.[2] In 1971, his position was changed to shuttle car or "buggy" operator.[3] During this period, Breeding also "shot coal," operated a stoker and jackhammer, and used a hammer to repair equipment. He operated the stoker and jackhammer two to three times a week for about an hour each time. He repaired equipment with a hammer about every day for two to five minutes. Breeding occasionally shot coal with explosives and the blasts would last about thirty seconds. During one three or four month period within the five year period preceding Breeding's claim,[4] he worked on a project which required him to drill holes and then shoot rock. It would take him five hours to drill ten holes; then he would insert explosives and detonate the shot. Breeding remained employed with Island Creek through the filing of his claim in September, 1986; however, Island Creek employment records reveal that he only worked four days in July, 1986.

Breeding characterized his work environment as noisy and described how his ears would pop after a shot was detonated. Noise surveys performed on Breeding in his capacity as a shuttle car operator revealed compliance with safety standards promulgated by the Mine Safety Health Administration (MSHA). The noise levels within the established standards are not considered to cause or precipitate a sensorineural hearing loss. Outside of work, Breeding squirrel hunted occasionally, used a skill saw, electrical gardening equipment, and a lawn mower, and turned the television volume up loud due to his hearing loss.

---

[1] A roof bolter inserts roof bolts into the roof of a coal mine for structural support to prevent roof falls.

[2] A stoker is similar to an air hammer and is used to drill holes in the roof of a coal mine. Roof bolts are then inserted in these holes.

[3] A shuttle car operator transports coal in a shuttle car from the working face of the mine to other areas.

[4] The significance of this five year period results from Code § 65.1-52(3) which provides:

The right to compensation under this chapter shall be forever barred unless a claim be filed with the Industrial Commission . . . two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs.

About ten years before a diagnosis of an occupational hearing loss was communicated to him, Breeding noticed some hearing difficulty and began to experience tinnitus (ringing of the ears). However, he did not consult a physician concerning his hearing problem until July 31, 1986, when he was examined by Dr. Claude H. Crockett, Jr., an otolaryngologist. Dr. Crockett obtained pure tone averages of twenty-one decibels for Breeding's right ear[5] and twenty-eight decibels for his left ear.[6] After obtaining Breeding's medical and noise exposure histories, Crockett concluded that Breeding had an occupational hearing loss and communicated this diagnosis to him.

In a letter to Breeding's attorney, Dr. Crockett stated:

Mr. Breeding's hearing loss is consistent with prolonged noise exposure that might be obtained during his twenty eight years employment in the mines. Whether or not there are any non-employment factors responsible for his hearing loss, I would have no way of knowing this. However, he does have a negative history for such.

During Dr. Crockett's deposition, the following colloquy occurred:

Q. With respect to Mr. Breeding, can you state within a reasonable degree of medical certainty that the hearing loss you diagnosed that Mr. Breeding has did not result from causes outside his employment?

A. No.

Q. At Beatrice Pocahontas Company (Island Creek's parent company)?

A. No, I cannot state that unequivocally; however, he did not give me a history of anything I might interpret as having caused it, other than his exposure to noise in his

---

[5] This is a noncompensable level based on the Hearing Determination Chart appended to the Workers' Compensation Act.

[6] This is equivalent to a 2.2 percent loss under the Hearing Determination Chart appended to the Workers' Compensation Act and would entitle Breeding to 1.1 weeks of compensation under Code § 65.1-56(17).

workplace.[7]

Breeding filed an application for workers' compensation benefits on September 4, 1986, alleging an occupational hearing loss. Island Creek defended on the grounds that: (1) Breeding suffered no injurious exposure after July 1, 1986, the effective date of Code § 65.1-46.1 making ordinary diseases of life compensable, and therefore application of Code § 65.1-46.1 to Breeding's claim would be retroactive and unconstitutional; and (2) even if Code § 65.1-46.1 is applicable to Breeding's claim, his hearing loss was not compensable because Breeding failed to prove by "clear and convincing evidence, to a reasonable medical certainty" that his work environment was the sole cause of his hearing loss, as required by Code § 65.1-46.1. The deputy commissioner ruled that Code § 65.1-46.1 applied to Breeding's claim. He also found·that Breeding satisfied the requirements of Code § 65.1-46.1 and was thus entitled to compensation for his hearing loss. The full commission affirmed, and this appeal followed.

## II.

During oral argument, Island Creek raised a statute of limitations defense for the first time on appeal, contending that Breeding did not meet his burden of proof that he was injuriously exposed within five years of the filing of his claim. The filing of a claim within the statutory period is, jurisdictional, *Anderson v. Clinchfield Coal Co.*, 214 Va. 674, 675, 204 S.E.2d 257, 258 (1974), and, therefore, failure to timely file may be raised for the first time on appeal. *See Board of Supervisors v. Loudoun Nat'l Bank*, 141 Va. 244, 247, 126 S.E. 196, 197 (1925). The burden is upon the claimant to prove that he has complied with the filing provisions of Code § 65.1-52. *Anderson*, 214 Va. at 675, 204 S.E.2d at 258.

Code § 65.1-52(3) sets forth the limitations period which governs most occupational diseases. It provides, in pertinent part:

---

[7] Dr. Crockett stated: "[Breeding] had no other history of noise exposure. There was no military, history of military service. He had hunted only occasionally and the rest of the history was essentially negative."

> The right to compensation under this chapter shall be for-
> ever barred unless a claim be filed with the Industrial Com-
> mission . . . two years after a diagnosis of the disease is first
> communicated to the employee or within five years from the
> date of the last injurious exposure in employment, whichever
> first occurs.

"Injurious exposure" is "an exposure to the causative hazard of such disease which is reasonably calculated to bring on the disease in question." *Id.* A claimant can meet the statutory standard for "injurious exposure" either "by establishing actual causation or aggravation of the disease or by showing that the exposure was of such duration and intensity that it generally causes the disease in question, even though actual causation or aggravation cannot be established in the claimant's case." *Caudle-Hyatt, Inc. v. Mixon*, 220 Va. 495, 500, 260 S.E.2d 193, 196 (1979).

We find, as the Industrial Commission implicitly did, that Breeding was injuriously exposed within the five years preceding the filing of his claim on September 4, 1986. Breeding's undis-puted testimony was that he was exposed regularly to drilling and blasting at loud noise levels, and he recounted an incident within the five year period preceding his claim where he was exposed daily for at least five hours a day to constant drilling and blasting so intense that it caused his ears to pop.

Because Breeding was injuriously exposed to noise at Island Creek within the five years preceding his claim, his claim is not time barred under the second prong of Code § 65.1-52(3). Nor is his claim barred under the first prong of Code § 65.1-52(3); a diagnosis was first communicated to Breeding on July 31, 1986, and he filed a claim on September 4, 1986, well within the two year period prescribed by Code § 65.1-52(3). Therefore, we find that Breeding's claim was timely filed.

## III.

Before we determine whether Code § 65.1-46.1 was properly applied to Breeding's claim, a history of the Code's development is appropriate. An ordinary disease of life is one to which the gen-eral public is exposed outside of the employment. Code § 65.1-46. Prior to July 1, 1986, ordinary diseases of life were noncompensa-

ble by statute with two limited exceptions.[8] See Code § 65.1-46 (1985). However, the Industrial Commission routinely awarded compensation for an ordinary disease of life if it was sufficiently connected to a claimant's employment by the claimant's satisfying the elements required for compensation of an occupational disease.[9] Report of the Joint Subcommittee Studying Workers' Compensation, H. Doc. No. 27, at 5 (1986). Consequently, hearing losses caused by a claimant's exposure to noise at work were compensated even though the general public was also susceptible to noise induced hearing loss outside of the employment. *See, e.g., Hale v. Clinchfield Coal Co.*, 59 O.I.C. 112 (1981); *Mullins v. Clinchfield Coal Co.*, 58 O.I.C. 253 (1978); *Lee v. Norfolk Gen. Hosp.*, 57 O.I.C. 226 (1977). In *Western Elec. Co. v. Gilliam*, 229 Va. 245, 329 S.E.2d 13 (1985), however, the Virginia Supreme Court held that, based on the clear legislative intent of Code § 65.1-46, an ordinary disease of life is noncompensable regardless of its causal connection to a claimant's employment. This court, bound by *Gilliam*, held in *Belcher v. City of Hampton*, 1 Va. App. 312, 338 S.E.2d 654 (1986), that hearing loss was a noncompensable ordinary disease of life.

---

[8] The two exceptions to noncompensability of an ordinary disease of life were: (1) when it followed as an incident of occupational disease or (2) when it was an infectious or contagious disease contracted in the course of employment in a hospital, sanitarium or public health laboratory.

[9] The requirements for compensation of an occupational disease are:

(1) A direct causal connection between the conditions under which work is performed and the occupational disease,

(2) It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment,

(3) It can be fairly traced to the employment as the proximate cause,

(4) It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column,

(5) It is incidental to the character of the business and not independent of the relation of employer and employee, and

(6) It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

■ In response to the *Gilliam* decision, the General Assembly enacted Code § 65.1-46.1, which makes ordinary diseases of life compensable if they are sufficiently connected to a claimant's employment. The statute, which became effective July 1, 1986, provides, in pertinent part:

An ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease for purposes of this Act if it is established by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment . . . and did not result from causes outside of the employment, and that:

1. It follows as an incident of occupational disease . . .; or

2. It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or public health laboratory or nursing home . . . or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel . . .; or

3. It is characteristic of the employment and was caused by conditions peculiar to such employment.

The purpose of this statute was to revert the law to its state prior to *Gilliam*. H. Doc. No. 27, at 8.

Island Creek contends that the pre-July 1, 1986, law must apply to Breeding's claim because Breeding only worked four days in July and therefore he was not injuriously exposed after July 1, 1986, the effective date of Code § 65.1-46.1. Consequently, application of Code § 65.1-46.1 to Breeding's claim, argues Island Creek, constitutes unconstitutional, retroactive legislation. This contention is without merit.

■ Under our Workers' Compensation Act, an occupational disease is not compensable until a diagnosis of such has been communicated to the employee. Code § 65.1-49. The date of the first

communication of the diagnosis is treated as "the happening of an injury by accident." *Id.* The right to compensation in cases of accidental injury is governed by the law in effect at the time of the injury. In this case, Breeding's injury occurred on July 31, 1986, the date his occupational hearing loss was first communicated to him. The law in effect on that date was that an ordinary disease of life is compensable if sufficiently connected to a claimant's employment. Code § 65.1-46.1.

Having determined that Code § 65.1-46.1 applies to any injury by accident, *i.e.,* any first communication of a diagnosis of an occupational disease occurring after its effective date, July 1, 1986, we must determine whether such an application is retroactive and, therefore, unconstitutional. We find that it is not.

 A statute is not unconstitutionally retroactive merely because it operates on facts which were in existence before its enactment. *Sizemore v. State Workmen's Comp. Commission,* 159 W. Va. 100, 107, 219 S.E.2d 912, 916 (1975); *Frisbie v. Sunshine Mining Co.,* 93 Idaho 169, ____, 457 P.2d 408, 411 (1969). Rather, a statute is unconstitutionally retroactive when it interferes with rights which had vested or liabilities which had accrued prior to its passage. *Wood v. J. P. Stevens & Co.,* 297 N.C. 636, 650, 256 S.E.2d 692, 701 (1979). An employee has no right to claim compensation for an occupational disease until he receives a communication of a diagnosis. Until that time, the employer is exposed to no liability.

In this case, on July 1, 1986, no rights had vested and no liability had accrued; therefore, no retroactive application is involved. *Cf. Wood v. J. P. Stevens & Co.,* 297 N.C. at 650-51, 256 S.E.2d at 701 (applying law in effect on date of disablement does not involve a retroactive application of the law because employee has no right to compensation and employer has no liability until disablement).

 This result is not inconsistent with our holding in *Dan River, Inc. v. Adkins,* 3 Va. App. 320, 349 S.E.2d 667 (1986). In *Adkins,* we were asked to apply the limitations period in effect on the date of the accident, the date of the first communication of a diagnosis of an occupational disease. We refused to do so, holding that "once a single prong of [a prior] limitation period is fulfilled, the employee's claim expires and the employer acquires a vested

right in its expiration." *Id.* at 325, 349 S.E.2d at 670. Absent an employer's vested right in the running of a prior statute of limitations, the applicable limitations period is governed by the law in effect on the date of the injury by accident, *i.e.*, the date of the communication of a diagnosis.

## IV.

Having ruled that Code § 65.1-46.1 was not retroactively applied in this case, we now address whether the Industrial Commission erred in finding that Breeding's hearing loss was a compensable ordinary disease of life under Code § 65.1-46.1. For an ordinary disease of life to be compensable under Code § 65.1-46.1, the claimant must establish "by clear and convincing evidence, to a reasonable medical certainty" that the disease (1) arose out of and in the course of employment, (2) did not result from causes outside of the employment, and (3) follows as an incident of an occupational disease, is an infectious disease or contagious disease contracted in the course of employment, or is characteristic of the employment and was caused by conditions peculiar to the employment.

Island Creek contends that Breeding did not meet the burden of proof imposed on him by Code § 65.1-46.1 because Dr. Crockett could not state "within a reasonable degree of medical certainty" that non-employment factors were not responsible for Breeding's hearing loss. Island Creek asserts that only a physician can determine whether the standard "to a reasonable medical certainty" is met and that if Dr. Crockett cannot state "to a reasonable medical certainty" that Breeding's hearing loss was not caused by non-employment factors, Breeding has not met the statutory burden of proof.

That Dr. Crockett would not state "within a reasonable degree of medical certainty" that Breeding's hearing loss was not caused by factors outside of his employment is not fatal to his case; the commission could and did draw the reasonable inference that Breeding's hearing loss was not caused by non-employment factors based on his negative history of other noise exposure which would cause such a hearing loss and the nonexistence of genetic or biological factors. We will not substitute form over substance by requiring a physician to use the magic words "to a reasonable medi-

cal certainty" when the record is void of any evidence of non-employment factors responsible for the hearing loss.

■ The commission's findings of fact are conclusive and binding on us when there is credible evidence in support of such findings. Code § 65.1-98; *Jules Hairstylists, Inc. v. Galanes*, 1 Va. App. 64, 68, 334 S.E.2d 592, 595 (1985). Whether a disease is causally related to the employment and not causally related to other factors is such a finding of fact. *See Watkins v. Halco Eng'g, Inc.*, 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). The commission found that Breeding's hearing loss was caused by his employment at Island Creek and that it was not caused by factors outside of his employment. These findings are supported by credible evidence.

Breeding's testimony about the noise level and his exposure to noise at Island Creek was uncontradicted. Although Island Creek introduced noise surveys performed on Breeding which showed compliance with MSHA safety standards and noise levels which are not considered to cause or precipitate a sensorineural hearing loss, these surveys were only conducted in his capacity as a shuttle car operator and not when he was operating a stoker or jackhammer or shooting coal, as he routinely did. Dr. Crockett opined that Breeding's hearing loss was caused by long-term exposure to noise in his employment at Island Creek and discounted non-employment factors as causing his hearing loss.

In summary, we find that the Industrial Commission properly applied Code § 65.1-46.1 to Breeding's claim and that there is credible evidence to support the commission's finding of a compensable ordinary disease of life under Code § 65.1-46.1. Accordingly, the decision of the Industrial Commission is affirmed.

*Affirmed.*

Koontz, C.J., and Barrow, J., concurred.