COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Overton
Argued by Teleconference


MITRE CORPORATION AND
 HOME INDEMNITY COMPANY
                                   MEMORANDUM OPINION[*] BY
v.        Record No. 1183-96-2   JUDGE ROSEMARIE ANNUNZIATA
                                        FEBRUARY 25, 1997
CHRISTINA GOURZIS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Edward H. Grove, III (Brault, Palmer, Grove,
          Zimmerman, White & Mims, on briefs), for
          appellants.

          Roger L. Williams (Vasiliki Moudilos;
          Williams & Pierce, on brief), for appellee.


     Employer, Mitre Corporation, appeals the commission's award

of benefits to claimant, Christina Gourzis.  Employer contends

that the evidence is insufficient to support the commission's

finding that claimant suffered a compensable ordinary disease of

life.  For the reasons stated below, we affirm.

                              I.

     Claimant was employed as a copier operator with employer

from January 1987 until December 4, 1992.  From September 1992

until December 4, 1992, she operated a particular copy machine in

a windowless room with a floor area eighteen feet square.  The

room also contained another, smaller copy machine.  Claimant

spent approximately nine hours per day in the room where both

_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

machines ran nearly constantly. She testified that the room was hot, stuffy, and smelly as a result of the copiers and that the air was not clear. Three of claimant's coworkers also testified that the room was hot and smelly. The smell was described as "weird" and "toxic." One coworker testified that the odor intensified during the week of December 4, 1992 and was especially bad on that day. Another coworker testified that the odor grew worse as the room grew hotter. A third described his difficulty breathing in the room and testified that he experienced respiratory problems sixty percent of the times he entered.

In mid-November 1992, claimant began having physical problems she had not previously experienced, including tightness in her chest, pain, an upset stomach, and headaches. Her symptoms dissipated while she was away from work over the Thanksgiving holiday.

Upon her return to work, the first week of December, claimant had problems with the copier. Specifically, she noticed that toner had leaked into the machine. On December 3, a copier technician inspected the copier; claimant testified that when the technician opened the machine it became evident that toner had spread everywhere inside. Claimant noticed that when she blew her nose, the discharge contained black particles. On December 4, claimant became very ill at work. She experienced chest pain, dryness in her throat, and persistent vomiting. Claimant had no

history of asthma or respiratory problems.

On December 7, claimant was examined by her family physician, Dr. Michael Trahos, who diagnosed her illness as a chemically induced bronchitis. On December 10, claimant was admitted to the hospital, where, among others, Dr. Timothy C. Bayly evaluated her. Dr. Bayly diagnosed a third degree burn in claimant's trachea and reported that the problem underlying claimant's condition was one of chemical toxicity resulting from exposure to overheated chemicals. Claimant was later referred to Dr. Rosemary K. Sokas who diagnosed occupationally induced asthma, an acute tracheal ulceration, and an anxiety disorder precipitated by the first two events.

Drs. Trahos and Sokas specifically noted that claimant had no preexisting respiratory condition. Dr. Sokas opined that claimant's condition resulted from exposure to chemical irritants from the copier at work. In addition to ozone generated by the copy machine, Dr. Sokas specifically identified the chemical components of the toner, developer, and fuser oils as elements contributing to claimant's condition and noted that claimant's exposure to the chemicals was enhanced by the temperature at which the copier ran, by the leakage, and by the condition of the workplace. Likewise, Drs. Trahos and Bayly opined that claimant's condition resulted from chemical exposure.

## II.

The parties do not dispute that claimant's condition is an

ordinary disease of life and that compensation is governed by Code § 65.2-401.  To be compensated for an ordinary disease of life, a claimant must prove,

> by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment as provided in § 65.2-400 . . . and did not result from causes outside of the employment, and that: . . . [i]t is characteristic of the employment and was caused by conditions peculiar to such employment.

Code § 65.2-401.  See also Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 11, 365 S.E.2d 782, 788 (1988).[1]

---

[1] Code § 65.2-400(B) provides:

> A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances:
> 1. A direct causal connection between the conditions under which work is performed and the occupational disease;
> 2. It can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment;
> 3. It can be fairly traced to the employment as the proximate cause;
> 4. It is neither a disease to which an employee may have had substantial exposure outside of the employment, nor any condition of the neck, back or spinal column;
> 5. It is incidental to the character of the business and not independent of the relation of employer and employee; and
>
> 6. It had its origin in a risk connected with the employment and flowed from that source as a natural consequence, though it need not have been foreseen or expected

"Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact." Breeding, 6 Va. App. at 12, 365 S.E.2d at 788. On appellate review, we must construe the evidence in the light most favorable to the prevailing party below, claimant in this instance. Crisp v. Brown's Tysons Corner Dodge, Inc., 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986). Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court. Rose v. Red's Hitch & Trailer Serv., Inc., 11 Va. App. 55, 60, 396 S.E.2d 392, 395 (1990). The presence of contrary evidence in the record is of "no consequence if there is credible evidence to support the commission's finding." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

We find that credible evidence in the case supports the commission's finding that claimant's ordinary disease of life is compensable. The medical records of Drs. Trahos, Sokas, and Bayly, as well as the testimony of claimant, corroborated by her coworkers, concerning the heat, the leakage, and the odor in the room, support the commission's finding that claimant's respiratory problems, tracheal ulcer, and stress disorder arose out of her employment and not as a result of other, non-work-related factors. The same evidence supports the
(..continued)

          before its contraction.

- 5 -

commission's finding that claimant's condition was "characteristic of the employment and caused by the conditions peculiar to the employment."  See Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 686-87, 376 S.E.2d 814, 816 (1989).  In Musick, this Court interpreted the Act as providing that

> an employee has a compensable disease when he [or she] proves that [the] disease was, in fact, developed at work as a result of the usual conditions to which he was exposed by his employment.  If the evidence shows a recognizable link between the disease and some distinctive feature of the claimant's job or work environment, we believe, if other qualifications are met, the legislature intended recovery.

Id. at 687, 376 S.E.2d at 816.[2]

In support of its position, employer relies on the testimony of the copier technicians who serviced the copier during the Fall of 1992 and found nothing wrong.  However, no technician was

_____

[2]The Musick Court provided the following example:

> An office worker exposed to asbestos at work, and who contracts asbestosis as a result of the exposure, would have a compensable ordinary disease of life because of the context in which the asbestosis was developed.  However, if those diseases were developed outside of the workplace, they would not be compensable diseases.  Thus, the legal test of whether a disease is "peculiar to the employment" is one of proof: if the claimant can affirmatively prove that he developed a disease because of the conditions of his workplace, he may receive compensation.  If he cannot prove that the disease is a result of exposure in the workplace, he cannot recover.

7 Va. App. at 687 n.1, 376 S.E.2d at 816 n.1.

present on December 4, 1992, the day claimant became ill, and none of the technicians was exposed to the conditions of the workplace to the extent claimant was so exposed. Furthermore, claimant's testimony concerning the toner leakage and the odor, heat, and air quality in the room was corroborated by her coworkers, and any conflict in the testimony was resolved by the commission.

Employer also relies on the fact that Dr. Bayly's diagnosis was predicated, in part, on claimant's report that the copier ran at 460 degrees. The copier's specifications called for it to operate between 345-355 degrees. One of the copier technicians testified that the copier could not have reached 460 degrees and that the copier appeared to be running at 358 degrees. However, as the commission found, the opinion of one of claimant's experts, Dr. Sokas, was based on an operating temperature of 358 degrees. Furthermore, the opinions of claimant's physicians were based on the machine's temperature in conjunction with the toner leakage; they were not based solely on the premise that the machine was running at an excessive temperature.

Employer also relies on results of testing completed in the Spring of 1995 to support its contention that credible evidence does not support a chemical exposure in December 1992. The results of the 1995 testing are even more tenuous than the testimony of the technicians concerning the possibility of chemical exposure in December 1992. Not only were the tests

conducted over two years later but, by the time they were conducted, the copier had been moved to a different location. Furthermore, even assuming the 1995 tests shed some light on the condition of the copier in 1992, the fact that the ozone readings were within OSHA standards does not render the finding of a chemical exposure incredible, especially since claimant's physicians did not consider the exposure solely related to ozone. Employer's argument that ozone levels in the ambient air are as high as those found around the copier is, for the same reasons, similarly not persuasive.

Finally, employer argues that the commission should have credited the opinion of its medical witness, Dr. Robert Swotinski, which contradicted the opinions of claimant's physicians. It is well settled, however, that a finding of the commission based on conflicting medical opinion, if credible, is conclusive and binding on appeal. E.g., Dep't of State Police v. Talbert, 1 Va. App. 250, 253, 337 S.E.2d 307, 308 (1985).

The decision of the commission is, accordingly, affirmed.

Affirmed.