COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Willis

BERT RAY FORBES

v.   Record No.  0150-97-2                MEMORANDUM OPINION[*]
                                              PER CURIAM
CREATIVE SCREEN PRINT, INC.                 JUNE 10, 1997
AND
FIRST OF GEORGIA INSURANCE COMPANY

        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (Bert Ray Forbes, pro se, on brief).

            (Donna White Kearney; Taylor & Walker, on
            brief), for appellees.


     Bert Ray Forbes contends that the Workers' Compensation
Commission erred in finding that he failed to prove that his
peripheral polyneuropathy constituted an occupational disease
arising out of and in the course of his employment.  Upon
reviewing the record and briefs of the parties, we conclude that
this appeal is without merit.  Accordingly, we summarily affirm
the commission's decision.  Rule 5A:27.

     A claimant must prove the existence of an occupational
disease by a preponderance of the evidence.  See Virginia Dep't
of State Police v. Talbert, 1 Va. App. 250, 253, 337 S.E.2d 307,
308 (1985).  "Whether a disease is causally related to the
employment and not causally related to other factors . . . is a
finding of fact."  Island Creek Coal Co. v. Breeding, 6 Va. App.

--------------------------------------------------------

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

1, 12, 365 S.E.2d 782, 788 (1988).  Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

An occupational disease is one "arising out of and in the course of employment."  Code § 65.2-400(A).  "A disease shall be deemed to arise out of the employment" when the evidence establishes six statutory elements.  Code § 65.2-400(B).  Those elements include showing "[a] direct causal connection between the conditions under which work is performed and the occupational disease" and that the disease "had its origin in a risk connected with the employment and flowed from that source as a natural consequence . . . ."  Code § 65.2-400(B)(1) and (B)(6).

Dr. Elizabeth Waterhouse, who began treating Forbes eight months after he experienced an acute episode of wheezing, diagnosed Forbes as suffering from peripheral polyneuropathy and solvent exposure.  In her September 13, 1995 office notes, Dr. Waterhouse listed the chemicals Forbes was exposed to at work. She then noted that "Dr. Campbell thought that the ketone methyl isobutyl is also known as MBK, which is known to cause neuropathy."  Dr. Waterhouse also noted that she intended "to call Dr. Saady . . . , who may be able to shed some more light on this situation."  On October 16, 1995, Dr. Waterhouse wrote that, "It is possible that some of his symptoms may be related to the

2

chemicals that he is involved with in his job at the printing plant." On January 10, 1996, Dr. Waterhouse reported as follows:

> In summary, [Forbes] continues to demonstrate a very mild peripheral polyneuropathy. His degree of worry and concern is slightly out of proportion to the findings that I am able to document on physical exam. If his symptoms are, indeed, related to solvent exposure, they may improve very gradually over the next few months, now that he is no longer exposed to the solvents.

Forbes continued to suffer from symptoms related to his condition after he stopped working. On July 10, 1996, Dr. Waterhouse referred Forbes to Dr. Moses for a lung function evaluation, noting that Forbes had not worked at the printing plant for over six months.

The commission found that Forbes failed to establish a compensable occupational disease under the requirements of Code § 65.2-400. The commission, in its role as fact finder, was entitled to give little weight to Dr. Waterhouse's opinions where she failed to state with any degree of reasonable medical certainty that Forbes' employment caused his peripheral polyneuropathy. Dr. Waterhouse's opinions were couched in terms of possibilities and speculation, rather than probabilities.

Based upon the absence of any persuasive medical opinion that Forbes' exposure at work to various chemicals and solvents caused his peripheral polyneuropathy, he did not prove as a matter of law a compensable occupational disease pursuant to the requirements of Code § 65.2-400. Thus, the commission did not

3

err in denying Forbes' application based upon a finding that he did not prove that his condition was caused by his employment or that it had its origin in a work-connected risk.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>