COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bray and Bumgardner
Argued at Chesapeake, Virginia


GWALTNEY OF SMITHFIELD, LTD. AND
 TRAVELERS INDEMNITY COMPANY OF ILLINOIS
                                        MEMORANDUM OPINION* BY
v.   Record No. 2505-99-1            JUDGE RUDOLPH BUMGARDNER, III
                                           APRIL 25, 2000
CLARICE CYPRESS


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            J. Derek Turrietta (William W. Nexsen;
            Stackhouse, Smith & Nexsen, on brief), for
            appellants.

            Barbara Evans-Yosief (Gerald G. Poindexter,
            on brief), for appellee.


     The Workers' Compensation Commission awarded benefits to

Clarice Cypress for left-hand carpal tunnel syndrome but found

that she had unjustifiably refused selective employment.

Gwaltney of Smithfield, Ltd. and its insurer contend that the

commission erred in finding (1) that the claimant's left-hand

carpal tunnel syndrome is a compensable ordinary disease of

life, and (2) that she was entitled to temporary total

disability benefits after June 19, 1998 because of her

right-hand carpal tunnel release surgery.  For the following

reasons, we affirm.

_____

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

We view the evidence in the light most favorable to the claimant, the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). "'Whether a disease is causally related to the employment and not causally related to other factors is . . . a finding of fact.'" Ross Laboratories v. Barbour, 13 Va. App. 373, 377-78, 412 S.E.2d 205, 208 (1991) (quoting Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 12, 365 S.E.2d 782, 788 (1988)). When credible evidence supports a finding of fact, it is conclusive and binding on this Court. See id. The fact that there is contrary medical evidence in the record is of no consequence if there is credible evidence to support the commission's decision. See Chanin v. Eastern Virginia Medical School, 20 Va. App. 587, 590, 459 S.E.2d 523, 524 (1995).

The claimant was a fatback trimmer who used a motorized circular knife to trim meat. She held the knife with her right hand and pulled the meat with her left. The claimant's job required sixty weight-bearing repetitive motions per minute. Prior to working for the employer she had no medical problems involving her hands or wrists.

The claimant sought treatment from the employer's clinic in November 1996 and again in June 1997 for pain in her "hands and fingers." She was given an analgesic rub, ice for her hands, and ibuprofen. The clinic did not refer her to a doctor. In August 1997, the claimant stopped working because of the pain.

The employer's medical services coordinator recommended she go to a doctor.

The claimant saw Dr. Timothy N. Lee, one of the employer's doctors, on August 27, 1997.  Dr. Lee returned the claimant to modified duty several times from August 28, 1997 through May 26, 1998 and recommended the use of wrist splints.  On September 2, 1997, Dr. Lee noted that the claimant should "continue work restrictions, specifically limited use of left hand but avoid repetitive grabbing and use with left hand.  No use of the right hand since this continues to be the most symptomatic."  When light duty work was unavailable and the claimant's condition failed to improve, he took her off work.

In August and September, 1997, Dr. Lee diagnosed the claimant with tendinitis/tenosynovitis in both hands and wrists.  By September 16, 1997, Dr. Lee diagnosed probable bilateral carpal tunnel syndrome.  He referred her to physical therapy and to Dr. Bruce I. Tetalman, a rehabilitation specialist with expertise in performing EMGs.  On September 26, 1997, Dr. Tetalman performed an EMG, which was positive for moderate to severe carpal tunnel syndrome in both wrists.  In his October 3, 1997 EMG report, he diagnosed the claimant with "bilateral carpal tunnel syndrome of moderate severity, left worse than right."  On October 10, 1997, Dr. Tetalman injected both her wrists.

Dr. Lee's October 7, 1997 office note indicated the claimant had bilateral carpal tunnel syndrome, although he could not confirm the diagnosis without further testing. He removed her from work for two weeks. The claimant returned to light duty on October 20, 1997, but continued to have pains in her hands and wrists. Dr. Lee reviewed Dr. Tetalman's October 3, 1997 report, the EMG studies, and the claimant's occupational and medical history. By letter dated November 11, 1997, Dr. Lee concluded she is "suffering from bilateral carpal tunnel syndrome and that this condition arose out of and in the course of her employment." He indicated that there was no evidence of non-work related causes of her CTS and opined that she "may very well require surgery for complete resolution of her problem."

In a December 5, 1997 office note, Dr. Lee indicated that the claimant has severe pain and numbness in both hands and wrists and that the "Tinel's and Phalen's remain positive." He continued her current therapy and recommended she stay out of work because any suitable modified job exacerbated her condition.

On December 19, 1997, Dr. Lee indicated that conservative therapy, which consisted of "splinting, s/p steroid injections in both wrists, anti-inflammatory medications and prolonged inactivity and time away from work," had not relieved the claimant's pain. He recommended surgery and referred her to Dr. Robert F. Brewer, a hand surgeon.

Dr. Brewer saw the claimant on January 9, 1998.  His consultation note indicated the "[e]xamination is very questionable in that she does not seem to have a specific Tinel's sign over the median nerve."  He found no objective indications that the claimant suffered from carpal tunnel syndrome and believed that her symptoms might have a psychological component.

In January 1998, Dr. Lee recommended another EMG study.  Dr. Tetalman performed the EMG, and his January 23, 1998 report indicated the claimant had CTS on the right but not the left.  Dr. Tetalman performed a third EMG April 3, 1998 at the insurer's request.  In his April 6, 1998 letter, Dr. Tetalman indicated the claimant's left CTS had resolved and the right CTS "has advanced and is now moderately severe."  He also noted that "initially her carpal tunnel was due to cumulative trauma disorder."

On May 5 and May 26, 1998, Dr. Lee released the claimant, who had not worked since November 1997, to light duty and referred her back to Dr. Tetalman.  Dr. Lee's diagnosis in both reports was bilateral CTS.  The claimant's gynecologist advised against her return to work because of hypertension and suggested the claimant get a second opinion about the pain and swelling in her wrists.

The claimant visited Dr. Douglas A. Wayne on June 10, 1998.  His office notes indicate that "she had very distinct positive

Tinels over the carpal tunnels bilaterally and positive median nerve compression test and positive Phalens test." Dr. Wayne found CTS in both wrists and referred her to Dr. Stephen J. Leibovic, a hand surgeon.

In a June 11, 1998 letter to Dr. Wayne, Dr. Leibovic concluded that the claimant "clearly has carpal tunnel syndrome, bilaterally. This is confirmed on the examination and EMG/NCS." Dr. Leibovic added, "meat packing plants are notorious for work that is difficult for the hands that can cause carpal tunnel syndrome. . . . There was in fact no history of pregnancy when the symptoms began. There is no doubt that her work in the meat packing plant exacerbated, and possibly caused, the carpal tunnel syndrome." On June 19, 1998, Dr. Leibovic operated on the claimant's right hand and scheduled her for left-wrist surgery.

The commission concluded that the claimant proved her CTS was a compensable ordinary disease of life under Code § 65.2-401.[1] It found that "the claimant has proven that she suffers from left carpal tunnel syndrome which became objectively asymptomatic following her removal from the workplace as of November 4, 1997. . . . [T]he claimant's

---

[1] Code § 65.2-401 provides that an ordinary disease of life "may be treated as an occupational disease . . . if . . . the disease exists and arose out of and in the course of employment . . . and . . . is characteristic of the employment and was caused by conditions peculiar to such employment."

treating physicians diagnosed the claimant with left carpal tunnel syndrome prior to November 1997 and there is no contrary evidence before us that would lead to a different conclusion." The employer contends the commission erred because Drs. Lee, Brewer, and Tetalman indicated that there was no left CTS or the CTS was of questionable origin.

In order to prove a compensable ordinary disease of life under Code § 65.2-401, the claimant must establish "by clear and convincing evidence, to a reasonable medical certainty," that her injury arose out of and in the course of her employment.[2] See Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938). Evidence is clear and convincing when it produces in the fact finder "a firm belief or conviction as to the allegation sought to be established. It is . . . more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (citation omitted).

Claimant's treating physician, Dr. Lee, believed as early as September 16, 1997 that the claimant had bilateral CTS. After Dr. Tetalman conducted further tests, Dr. Lee confirmed

---

[2] The General Assembly amended Code § 65.2-401 in 1997 to delete "to a reasonable medical certainty" and to add "(not a mere probability)."

and reiterated his diagnosis of CTS in his November 11, 1997 letter. He unequivocally indicated that the CTS arose out of and in the course of the claimant's employment. Dr. Tetalman's EMG report of October 3, 1997, also concludes that the claimant had bilateral CTS of moderate severity. Dr. Tetalman's April 6, 1998 note indicated that her initial CTS "was due to cumulative trauma disorder." While Dr. Brewer questioned the origin of the claimant's symptoms and found no indication of CTS, he evaluated the claimant in January 1998 after she had been off from work for several months.

It was reasonable to conclude that an overuse disease would improve with inactivity. Dr. Brewer's evidence did not contradict the findings of both Drs. Lee and Tetalman that the claimant had CTS in the fall of 1997. Additionally, there was evidence she suffered from CTS as late as the summer of 1998. The claimant did not engage in any non-work related activities that could have caused her CTS, and she did not have any problems with her hands or wrists before working for the employer. The claimant's previous job as a line worker chopping meat at another plant is immaterial because her CTS symptoms did not develop until she worked for the employer.

In National Fruit Product Co. v. Staton, 28 Va. App. 650, 654, 507 S.E.2d 667, 669 (1998), aff'd, __ Va. __, __ S.E.2d __ (2000), the Court affirmed the claimant's award of benefits. The claimant's doctor opined that there was a "high probability"

the employment caused her CTS.  The court held that the doctor's opinion, coupled with the claimant's own testimony, satisfied her burden of proving the injury arose out of and in the course of her employment by clear and convincing evidence.  Unlike Staton, Dr. Leibovic's opinion that the claimant's employment "possibly caused" her CTS was not the only evidence of causation.  Dr. Lee, the claimant's treating physician, definitively stated her CTS arose out of and in the course of her employment.  This November 11, 1997 opinion was uncontradicted and corroborated the claimant's testimony.  Additionally, Dr. Tetalman indicated that her CTS initially arose from "cumulative trauma syndrome," which logically resulted from her work for the employer.  Dr. Brewer's indication in January 1998 that the claimant's symptoms were of questionable origin does not refute the fall diagnosis.  The commission resolves questions of fact.  We conclude there is credible evidence to support the commission's finding that the claimant proved she had CTS and that it arose out of and in the course of her employment.

The employer also argues the commission erred in awarding temporary total disability benefits after the right-hand carpal tunnel release surgery June 19, 1998.  The employer argues that the claimant "was not entitled to continuing disability because the total disability was not attributable to the originally compensable [right-hand CTS], but instead related to her

pregnancy."  The claimant was diagnosed with right-hand CTS before she became pregnant in October 1997.  While the pregnancy impeded her recovery, it did not cause the CTS.  Dr. Tetalman attributed "the worsening of the [claimant's] right carpal tunnel to her pregnancy."  The employer's argument that the surgery was unrelated to the originally compensable ordinary disease of life is without merit.

For the foregoing reasons, we affirm the commission's decision.

<u>Affirmed.</u>