COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Decker, Judge Alston and Senior Judge Frank
Argued at Norfolk, Virginia

UNPUBLISHED

LOURDES IGLESIAS

                                                 MEMORANDUM OPINION[*]
v.      Record No. 1292-18-1           JUDGE ROSSIE D. ALSTON, JR.
                                                  APRIL 16, 2019

QVC SUFFOLK INC. AND
  LIBERTY INSURANCE CORPORATION

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Lourdes Iglesias, *pro se*.

Pietro F. Sanitate (Midkiff, Muncie & Ross, P.C., on brief), for
appellees.

Lourdes Iglesias (appellant) appeals the Workers' Compensation Commission's
(Commission) denial of her claim in which she alleged injury by accident and occupational
disease.  Appellant specifically contends that her claim is not time-barred and argues that she
substantiated the causal link between her physical condition and her on-the-job exposure to an
animal.  While the Commission erred when it determined that the occupational disease portion of
her claim was time-barred, we affirm the Commission's denial of her claim on the merits.

## I. BACKGROUND

Appellant was employed by QVC Suffolk Inc. (appellee) "in receiving as a warehouse
specialist" at all times relevant to this appeal.  In that capacity, appellant unloaded trucks and
shelved company products while operating a TSP.[1]  The typical state of the warehouse included

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant described this machine as "heavy equipment" used to lift and shelve products.

molding boxes, a leaking roof, birds flying overhead, and animals, such as a fox and cat, scurrying across the floor.

Over the weekend of August 25 and 26, 2012,[2] while shelving company products, appellant noticed a bat crawling on top of a container. After consulting with co-workers, appellant, wearing protective rubber gloves, removed the bat and placed it into a box. At the conclusion of her shift, appellant notified security of what occurred, exited the warehouse, and secured the box in the back of her vehicle. Appellant then contacted the police, who ultimately retrieved the bat.

Approximately two weeks later, appellant developed respiratory issues, including difficulty breathing and a deep cough, as well as a low-grade fever, lethargy, and facial skin irritation. Appellant's symptoms prompted her to file an incident report with appellee on the basis of her mold exposure and to seek medical attention from her primary care physician, Dr. Monique Lee (Dr. M. Lee). At her initial visit on August 24, 2012, Dr. M. Lee observed that appellant suffered from Dyspnea, rash, and other nonspecific skin eruption, as well as an allergic reaction. Dr. M. Lee then referred appellant to a pulmonary specialist or an allergist for "mold exposure." Appellant was seen by Dr. Timothy Lee (Dr. T. Lee), on September 12, 2012. Dr. T. Lee found that appellant contracted "[r]eactive airway disease, possibly secondary to workplace mold exposure" and prescribed her antibiotics and an inhaler. He attached a workers' compensation injury status report, advising that appellant "[r]eturn to regular work." At her follow-up appointment with Dr. T. Lee, he concluded that her "[r]eactive airway disease [was] essentially resolved" and released her from his care. On December 18, 2012, appellant was seen by Dr. Jeffrey Forman, to whom she was referred by Dr. M. Lee, for a "pulmonary nodule." In reciting her "[h]istory of present illness," Dr. Forman referred to appellant's exposure to mold

---

[2] A review of the date of appellant's exposure appears *infra*.

and confirmed the presence of a pulmonary nodule. He scheduled a CT scan for appellant's next appointment. On January 4, 2013, appellant visited Dr. M. Lee, and her summary report reflected that appellant underwent a CT scan the previous day; upon appellant's request for an evaluation with respect to mold exposure, Dr. M. Lee referred appellant to Dr. Matthew Tignor, a specialist in infectious diseases. On January 25, 2013, appellant returned for a follow-up appointment with Dr. Forman. He acknowledged the pulmonary nodule, reviewed her CT scans, discussed her concerns, and agreed to see her in three months for a subsequent CT scan. At that follow-up visit, which occurred on April 9, 2013, Dr. Forman notated that appellant had seen an allergist as well as Dr. Tignor; however, appellant had refused the scheduled CT scan. Consequently, Dr. Forman informed appellant that he could not help her and recommended that she continue to see her allergist and Dr. Tignor. Accordingly, appellant was seen by Dr. Vandana Patel, who administered a CT scan on April 11, 2014. While there were "no pulmonary nodules or masses," the CT scan revealed a "thick linear scar in the lingual."

On August 28, 2017, appellant filed a claim for a lifetime award of medical benefits predicated on the bat exposure, alleging injury by accident and occupational disease by injurious exposure.[3] At the evidentiary hearing, appellant testified. When questioned about the date of the incident, appellant maintained that she worked the weekend shift, which began Saturday and

---

[3] In 2012, appellant filed claims for workers' compensation for respiratory issues stemming from the mold exposure. The deputy commissioner denied appellant's claims because she failed to prove injury by accident, an occupational disease, or compensable ordinary disease of life. Appellant did not seek review within thirty days; accordingly, the denial of her claims became final. On August 29, 2017, appellant requested review of her 2012 claims and also filed an application for a change-in-condition due to the mold and bat exposure. The deputy commissioner dismissed the matter on the basis of *res judicata*, concluding that these claims were identical to appellant's 2012 claims. Appellant sought review of this determination. The Commission affirmed, noting that it no longer had jurisdiction over the 2012 claims and finding again that appellant failed to request review within thirty days; thus, the deputy commissioner's ruling became final. The Commission also agreed that appellant's claim was barred on the basis of *res judicata*. Iglesias v. QVC Suffolk, Inc., JCN VA00000658702 (VA Wrk. Comp. Jan. 22, 2018).

continued into Sunday. She mentioned both August 26 and August 27, 2012, as relevant dates. Indicating that the bat exposure occurred "during those times," appellant specifically testified that she was last exposed to the bat early on Sunday morning. Appellant contended that appellee was aware of the incident because she discussed it with two employees, "Carol" in human resources and "Anthony," a security guard. According to appellant, she delayed filing this claim because 1) some of her symptoms persisted, 2) she had experienced pain on the left side of her back, and 3) her Medicaid coverage lapsed. Once appellant was told she had a scar on her lung, she claimed that the scarring was caused by working in the warehouse. While reviewing her medical records and conducting additional research, appellant discovered that exposure to the excrement of bats and birds can cause illnesses. On cross-examination, appellant noted that other employees also became ill. Appellant acknowledged that she did not notify appellee that the bat exposure caused her physical condition but explained that she believed proceeding through the workers' compensation process was sufficient.

The deputy commissioner found appellant's claim was time-barred and denied her compensation. Appellant timely sought review of that determination. The Commission affirmed, agreeing that appellant's claim was time-barred and further stated "[m]oreover, [appellant] has presented no evidence linking the handling of the bat to any of her medical conditions."

Now comes this appeal.

## II. ANALYSIS

"In reviewing the [C]ommission's judgment, we view the evidence in the light most favorable to [appellee, the employer], the prevailing party below." Wainwright v. Newport News Shipbldg. and Dry Dock Co., 50 Va. App. 421, 430 (2007) (citing R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212 (1990)). Questions of law, such as "[w]hether a claim is barred

- 4 -

by the statute of limitations," merit *de novo* review. Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 284 (2005) (quoting Tomes v. James City (Cty. of) Fire, 39 Va. App. 424, 430 (2002)). Findings of fact, "[i]f supported by credible evidence, . . . are binding on appeal. 'The fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [C]ommission's finding.'" Samartino v. Fairfax Cty. Fire and Rescue, 64 Va. App. 499, 506 (2015) (internal citations omitted).

Considering the timeliness of appellant's claim, "[t]he right to compensation under the [workers'] compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise." Miller v. Locher Silica Corp., 12 Va. App. 1213, 1215 (1991) (quoting Winston v. City of Richmond, 196 Va. 403, 407 (1954)). Further, "[t]he filing of a claim within the limitation period is jurisdictional. The burden is on the claimant to prove compliance with the statute." Via v. Citicorp Mortg., Inc., 10 Va. App. 572, 576 (1990) (internal citations omitted). With respect to the merits, "[w]hether a disease is causally related to the employment and not causally related to other factors is such a finding of fact." Fairfax Cty. v. Espinola, 11 Va. App. 126, 129 (1990) (quoting Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 12 (1988)).

A. INJURY BY ACCIDENT

Pursuant to Code § 65.2-601, "[t]he right to compensation under this title shall be forever barred, unless a claim be filed with the Commission within two years after the accident." Appellant's claim was filed well beyond this two-year statute of limitations, and no exceptions to the statute of limitations applied.[4] Accordingly, we agree with the Commission that the injury by accident portion of appellant's claim was time-barred.

_____

[4] Those exceptions are 1) when "the employer fails to file the first report of accident and such conduct operates to prejudice the rights of the employee with regard to filing the claim prior to [its] expiration" pursuant to Code § 65.2-602, which was amended in 2019, 2) when "the

B. Occupational Disease

Code § 65.2-406(A) sets forth statutes of limitation for particular occupational diseases as well as for "all other occupational diseases." Code § 65.2-406(A)(6). As appellant did not allege any of the enumerated occupational diseases, we turn to subsection (A)(6).[5] (A)(6) provides that "[t]he right to compensation . . . shall be forever barred unless a claim is filed with the Commission within . . . two years after a diagnosis of the disease is first communicated to the employee or within five years from the date of the last injurious exposure in employment, whichever first occurs." Because appellant did not receive a diagnosis of an occupational disease but rather complains of a collection of symptoms, we consider "the date of the last injurious exposure." "'[I]njurious exposure' means an exposure to the causative hazard of such disease which is reasonably calculated to bring on the disease in question." Code § 65.2-404. In Espinola, we noted that

> [a] claimant can meet the statutory standard either "by establishing actual causation or aggravation of the disease or by showing that

---

employer is estopped from asserting the statute of limitations defense if [appellant] provides unequivocal evidence that she refrained from filing . . . because employer misrepresented or concealed material facts," and 3) when the doctrine of "imposition" applies, which "requires a threshold showing of unfairness: '[t]he doctrine focuses on an employer's or the [C]ommission's use of superior knowledge of or experience with the Workers' Compensation Act or use of economic leverage, which results in an unjust deprivation to the employee of benefits warranted under the Act.'" Tuck, 47 Va. App. at 284-85.

[5] On brief, appellant claims she contracted "Histoplasmosis," which is "[a] widely distributed infectious disease caused by Histoplasma capsulatam and occur[s] frequently in epidemics; usually acquired by inhalation of spores of the fungus of soil dust . . . . [O]ccasionally, the primary disease progresses to produce localized lesions in [the] lung." Stedman's Medical Dictionary 801 (26th ed. 1995). "Histoplasma capsulatam" is "[a] dismorphic fungus species of worldwide distribution . . . [, and t]he organism's natural habitat is soil fertilized with bird and bat droppings, where it grows as a mold, fragments of which, following inhalation, produce the primary pulmonary infection." Id. Appellant also analogizes the latent effects of this disease to those diseases contracted as a result of exposure to toxic dust created by the September 11, 2001 attacks. Appellant did not present either of these contentions to the Commission, thus, we will not consider them now for the first time on appeal. Williams v. Gloucester (Cty. of) Sheriff's Dep't, 266 Va. 409, 411-12 (2003) (outlining the function and effect of the contemporaneous objection rule as stated in Rule 5A:18).

the exposure was of such duration and intensity that it generally causes the disease in question, even though actual causation or aggravation cannot be established in the claimant's case."

11 Va. App. at 131 (quoting Breeding, 6 Va. App. at 7).

Appellant testified that she worked the weekend shift during August 26 and 27, 2012. It is not disputed that August 26 and 27 of 2012 fell on a Sunday and Monday. Accordingly, appellant was mistaken in her testimony. That weekend shift thus would have fallen on August 25 and 26, 2012. Although appellant may have been uncertain regarding the specific dates she worked, appellant testified unequivocally that she was last exposed to the bat on Sunday morning when she placed the box containing the bat in her vehicle. According to our calculations, five years from Sunday, August 26, 2012, is August 26, 2017. That date was a Saturday.

In neither the parties' briefs, the deputy commissioner's opinion, nor the Commission's opinion, do we find a reference to Code § 1-210, Virginia's computation of time statute. Pursuant to Code § 1-210(C),

> [w]hen an act of the General Assembly specifies a maximum period of time in which a legal action may be brought and the last day of that period falls on a *Saturday*, Sunday, legal holiday, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly, *the action may be brought on the next day that is not a Saturday, Sunday, legal holiday*, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly.

(Emphasis added).

Accordingly, appellant was permitted to file the occupational disease portion of her claim as late as Monday, August 28, 2017. Turning to the record, appellant signed and dated her claim August 25, 2017. The electronic date stamp on the left-hand side of her filed claim reflects "BR 08/28/2017." On the bottom right-hand corner of the claim, the Virginia Workers' Compensation Commission's stamp reads "VWC AUG 28 2017 Indexing Tech J." Because

- 7 -

appellant filed her claim on August 28, 2017, the Commission erred as a matter of law when it found that the entirety of appellant's claim was time-barred.

Because appellant timely filed the occupational disease portion of her claim, we turn to the merits.

An "occupational disease" is defined as "a disease arising out of and in the course of employment, but not an ordinary disease of life to which the general public is exposed outside of the employment." Code § 65.2-400(A). "A disease shall be deemed to arise out of the employment only if there is apparent to the rational mind, upon consideration of all the circumstances," including "[a] direct causal connection between the conditions under which work is performed and the occupational disease." Code § 65.2-400(B)(1).

In addition, "Code § 65.1-46.1 [now § 65.2-401] makes ordinary diseases of life compensable in the same manner as occupational diseases if they are sufficiently connected to a claimant's employment." Via, 10 Va. App. at 576 (citing Breeding, 6 Va. App. at 9). Code § 65.2-401 provides that "[a]n ordinary disease of life to which the general public is exposed outside of the employment may be treated as an occupational disease . . . if each of the following elements is established by clear and convincing evidence, (not a mere probability)." One such element is "[t]hat the disease exist[] and ar[i]se out of and in the course of employment as provided in § 65.2-400 with respect to occupational disease and did not result from causes outside of the employment." Code § 65.2-401(1).

Thus, when claiming workers' compensation as a result of occupational disease or an ordinary disease of life compensable as an occupational disease, appellant was required to demonstrate that her condition "ar[o]se out of employment" as defined in Code § 65.2-400. See Code §§ 65.2-400(B) and 65.2-401(1) (noting that this must be established by clear and convincing evidence). To do so, appellant must establish a "direct causal connection between

the conditions under which work is performed and the occupational disease." Code § 65.2-400(B)(1). The Commission found that appellant failed to meet her burden, stating that "[appellant] presented no evidence linking the handling of the bat to her medical conditions." Appellant did not assign error to this finding; "[t]hus, that finding is binding and conclusive upon us." See, e.g., Sturtz v. Chesapeake Corp. of Virginia and Pacific Emp'rs Ins. Co., 38 Va. App. 672, 675 n.1 (2002). Although appellant testified that such a causal connection existed, appellant's belief focused on her independent research and her personal review of her medical records. Appellant is not a physician, and no medical evidence in the record supported appellant's contention. Her physical condition was never attributed to the bat exposure, and none of her medical records even contained a reference to her bat exposure. "Medical evidence is . . . subject to the [C]ommission's consideration and weighing." Waynesboro (City of) Police v. Coffey, 35 Va. App. 264, 268 (2001) (quoting Hungerford Mech. Corp. v. Hobson, 11 Va. App. 675, 677 (1991)). In addition, "[t]he fact that there is contrary evidence in the record is of no consequence if there is credible evidence to support the [C]ommission's finding.'" Samartino, 64 Va. App. at 506 (quoting Wagner Enters., Inc., v. Brooks, 12 Va. App. 890, 894 (1991)).

Accordingly, the Commission's determination was supported by the record. The applicable standard of review warrants an affirmance of the Commission's determination.

### III. CONCLUSION

The Commission correctly held that the injury by accident portion of appellant's claim was time-barred. The Commission erred as a matter of law when it found that the occupational disease portion of appellant's claim was time-barred. However, the Commission ultimately made a determination on the merits, finding that appellant failed to establish that her physical

condition arose out of her employment.  That determination stood unchallenged and was supported by credible evidence.  Accordingly, we must affirm.

Affirmed.